STATE OF CONNECTICUT *v.* THE KEYHOLE PUBLISHING COMPANY ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 9-6411-2154

Argued July 6—decided August 26, 1965

*Herald P. Fahringer, Jr.,* of Buffalo, N.Y., member of the New York bar, with whom, on the brief, was *Irwin D. Mittelman,* of Middletown, for the appellants (defendants).

*William P. Lage,* special assistant prosecuting attorney, for the appellee (state).

*Joseph E. Fazzano* and *Stanley Leven,* both of Hartford, and *Morris B. Abram* and *Jay Greenfield,* both of New York, N.Y., and members of the New York bar, as amicus curiae.

JACOBS, J. For nearly one hundred and fifty years, or at least as far back as 1824, Connecticut has had on its books a criminal antiobscenity statute.[1] In 1963, the General Assembly enacted legislation (General Statutes §§ 53-244a to 53-244m), supplementing existing criminal sanctions (§ 53-243) and authorizing the use of civil remedies, by way of limited injunctive relief under judicially controlled safeguards, designed and calculated to control at the source[2] the sale and distribution of "mailable

---

[1] "If any person shall print, import, publish, sell or distribute, any book, pamphlet, ballad, or other printed paper, containing obscene language, prints, or descriptions; such person, being thereof duly convicted, before the county court, shall forfeit and pay, for every such offence, a sum not exceeding fifty dollars." Statutes, 1824, p. 109, § 69; see Statutes, 1838, p. 162, § 82; Statutes, 1849, p. 250, § 135; Rev. 1866, p. 278, § 201; Rev. 1875, p. 512, § 3; Rev. 1888, § 1537; Rev. 1902, § 1325; Rev. 1918, § 6397; Rev. 1930, § 6244; Rev. 1949, § 8567; Rev. 1958, § 53-243.

[2] "SENATOR ALFANO: '. . . This is another piece of legislation designed to tackle the problem of the very serious flow of obscene matter in the State of Connecticut. . . . What is very important about this act is that it is the first time in any of our legislation that we can get at the source of the material . . . .' SENATOR RELIHAN: '. . . I feel this legislation makes it possible to inquire

matter,"[3] or printed or written matter or material,[4] found, after trial, to be obscene[5]; provision is also made (§ 53-244h) for an order of seizure and destruction, in default of voluntary surrender, of the materials condemned as obscene.

Pursuant to and under the provisions of § 53-244c, the assistant prosecuting attorney for the ninth circuit filed in the Circuit Court an application for an injunction directed against certain named defendants, described as persons and entities having an interest in the matters which a final judgment may affect and whose presence is necessary for complete determination of the case, to enjoin them and others in active concert with them from distributing or selling the October, 1964, and the November, 1964, editions of a publication called "The Keyhole," printed and published monthly by the Keyhole Pub-

into the book or the other literature before the literature is put on the stand or even after it is put on the stand, and have a judicial examination by the court.' . . . SENATOR SHULANSKY: '. . . One of the problems has been that it's practically impossible for the distributors or even the news vendors to read and scrutinize everything which is available on his stand or in his place of business. This [act] gets at the source of all [the] difficulty . . . and gives us a remedy which is a sensible remedy.'" 10 S. Proc., Pt. 8, 1963 Sess., pp. 2832, 2834-35.

[3] "'[M]ailable matter' means (a) printed or written matter or material having second class mailing privileges under the laws of the United States; or (b) any other printed or written matter or material which has not been determined to be nonmailable under the laws of the United States. . . ." General Statutes § 53-244a.

[4] "'[P]rinted or written matter or material' means, but is not limited to, any book, pamphlet, magazine, periodical, newspaper, picture, picture magazine, comic book, story paper or other printed or written matter." General Statutes § 53-244a.

[5] "'[O]bscene' means that to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest. . . ." General Statutes § 53-244a; see *Roth* v. *United States*, 354 U.S. 476, 489, *State* v. *Sul*, 146 Conn. 78, 85, and *State* v. *Andrews*, 150 Conn. 92, 97, referred to in *State* v. *Martin*, 3 Conn. Cir. Ct. 309, 311 n.4, as the *Roth-Sul-Andrews* trichotomy; see also *Jacobellis* v. *Ohio*, 378 U.S. 184, 191.

lishing Company, of the city of Hollywood, California. The prosecutor alleged in the complaint that the contents of the challenged material are "principally made up of accounts of illicit sex, perversion, horror, physical torture, crime, brutality, physical violence, or combinations of the two or more thereof; and the pictures, photographs and drawings in said materials are principally of nude or partially denuded figures posed or presented in a manner likely to provoke or arouse lust and passion and designed to exploit sex, lust and perversion for commercial gain"; and that "the dominant theme of the material taken as a whole appeals to prurient interest." The state sought (1) an adjudication that the impugned materials are obscene; (2) a restraining order directed against the named defendants and others acting in concert with them, enjoining them from selling or distributing the challenged materials "and all similar mailable matter"; and (3) the surrender, seizure and destruction of the publications found to be obscene. The court *(Holden, J.)*, acting under § 53-244d (c), made an examination of the materials ex parte, found probable cause to believe that the two issues of "The Keyhole" were obscene, and made an order directing the defendants to show cause why an injunction should not be issued as prayed for in the application and complaint. The defendants appeared and filed a general denial. A jury found the publications obscene.[6] Judgment was rendered (§§ 53-244h, 53-244i) permanently enjoining the defendants and others in active concert with them from doing or continuing the acts proscribed by the statutes "under penalty of $1,000 fine or two years' imprisonment or both."[7]

---

[6] Provision is made by statute for trial by jury which "shall have precedence in respect to the order of trial." General Statutes § 53-244f.

[7] The court is empowered, as in other cases of contempt, to punish disobedience to a temporary or permanent injunction by fine

Of the several assignments of error raised and pursued on appeal, we need only consider one: Whether the two issues of "The Keyhole," when applicable constitutional standards are applied, are obscene in the statutory sense and therefore subject to repression.

Three years ago, in *State* v. *Andrews,* 150 Conn. 92, 100, Chief Justice Baldwin, after reviewing a number of obscenity cases handed down by the United States Supreme Court following its landmark decision in *Roth* v. *United States,* 354 U.S. 476, concluded: "In our examination of the case law and legal literature on obscenity, we have found no more specific a definition of what can be adjudged obscene than that contained in *Roth* v. *United States,* supra, 487." We said in *State* v. *Cercone,* 2 Conn. Cir. Ct. 144, 148: "Connecticut has adopted the *Roth* test for obscenity." We have strictly adhered to that test. See *State* v. *Onorato,* 2 Conn. Cir. Ct. 428, 430; *State* v. *Martin,* 3 Conn. Cir. Ct. 309.[8] In *Jacobellis* v. *Ohio,* 378 U.S. 184, the United States Supreme Court found the French film "Les Amants" ("The Lovers") not obscene under the *Roth-Alberts* definition.[9] There, a three judge court, upon waiver of trial by jury, had convicted Jacobellis of possessing and exhibiting an obscene film. His conviction was affirmed

of not more than $1000 or by imprisonment for not more than two years or both. General Statutes § 53-2441.

[8] In *State* v. *Martin,* we held that nudist magazines were not obscene, basing our decision squarely upon *Sunshine Book Co.* v. *Summerfield,* 355 U.S. 372, as we interpreted that case. Mr. Justice Brennan in *Jacobellis* v. *Ohio,* 378 U.S. 184, 190, explicitly said: "[T]his Court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." He added in a footnote (n.6) that "[t]his is precisely what the Court did in . . . *Sunshine Book Co.* v. *Summerfield.*"

[9] *Alberts* v. *California,* 354 U.S. 476, an appeal from the Superior Court of California, Los Angeles County, Appellate Department, was argued and decided on the same dates as the *Roth* case.

per curiam by an intermediate appellate court; 115 Ohio App. 226; and by the Ohio Supreme Court. *State* v. *Jacobellis,* 173 Ohio St. 22. The Ohio Supreme Court had divided the film into eighty-seven minutes of "vapid drivel" and "three minutes of complete revulsion during the showing of an act of perverted obscenity." Id., 28. In reversing the conviction of Jacobellis, the United States Supreme Court applied the *Roth* test to movies for the first time. Mr. Justice Brennan, announcing the judgment of the court, conceded that the *Roth-Alberts* test of obscenity was imperfect but chose nonetheless to retain it for want of a more workable standard. Seemingly, however, under the *Jacobellis* formulation, the challenged material must be without artistic value and exceed the customary limits of candor, and must have as its dominant theme an appeal to the average man's prurient interest, when viewed as a whole by the national community.[10] Moreover, it would appear that each part of the test must be satisfied in order to deny the material constitutional protection. ". . . *Jacobellis* leaves the relevant tests so subjective and devoid of explication as to offer little guidance for determining the obscenity of a specific work." "The Supreme Court, 1963 Term," 78 Harv. L. Rev. 143, 208. "The result is that censorship is permissible if the Court approves it and unconstitutional if the court overrules it." Kurland, "Foreword: 'Equal in Origin and Equal in Title to the Legislative and Executive

---

[10] "We thus reaffirm the position taken in *Roth* to the effect that the constitutional status of an allegedly obscene work must be determined on the basis of a national standard." *Jacobellis* v. *Ohio,* 378 U.S. 184, 195. Mr. Chief Justice Warren in his dissenting opinion made it quite clear that he did not agree. "I believe that there is no provable 'national standard,' and perhaps there should be none. At all events, this Court has not been able to enunciate one, and it would be unreasonable to expect local courts to divine one." Id., 200.

Branches of the Government,'" 78 Harv. L. Rev. 143, 167.

It was suggested to the court in *Jacobellis* v. *Ohio,* supra, that the application of an obscenity law to a given work is a task with which the court need not involve itself because the determination of obscenity may be treated as a purely factual judgment on which a jury's verdict is all but conclusive. This idea the court rejected. "The suggestion," said Mr. Justice Brennan (p. 187), "is appealing, since it would lift from our shoulders a difficult, recurring and unpleasant task. But we cannot accept it. Such an abnegation of judicial supervision in this field would be inconsistent with our duty to uphold the constitutional guarantees. . . . [T]he question whether a particular work is obscene necessarily implicates an issue of constitutional law. See *Roth* v. *United States,* supra, 354 U.S., at 497-498 (separate opinion). Such an issue, we think, must ultimately be decided by this Court. Our duty admits of no 'substitute for facing up to the tough individual problems of constitutional judgment involved in every obscenity case.' Id., at 498; see *Manual Enterprises, Inc.* v. *Day,* 370 U.S. 478, 488 (opinion of HARLAN, J.)." We take this to mean that whether a given work is obscene and therefore beyond the scope of constitutional protection is ultimately for the court to determine as a matter of law.[11] The

---

[11] In *Jacobellis,* it was declared (378 U.S. at 190): "Hence we reaffirm the principle that, in 'obscenity' cases as in all others involving rights derived from the First Amendment guarantees of free expression, this Court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." And it was added in a footnote (n.6): "Nor do we think our duty of constitutional adjudication in this area can properly be relaxed by reliance on a 'sufficient evidence' standard of review. Even in judicial review of administrative agency determinations, questions of 'constitutional fact' have been held to require *de novo* review."

burden on this court at this intermediate appellate stage ought to be no less.

The exhibits in the case before us are tabloids, each issue comprising twenty-four pages, published monthly, and priced at twenty-five cents a copy. They contain a deluge of sensational and scandalous material. The articles deal with the sorrier aspects of human behavior in our national life. The stories and accounts appear under bold, ribbon headlines but, upon examination, contain innocuous and misleading, if not dismal and dull, texts. The selections of immoralities are described in slick language. They maintain throughout a clever, and apparently deliberate, avoidance of socially unacceptable language. None of the contributors is distinguished by his place in the literary world nor by the quality of his style. What we have before us are publications the most important and prominent features of which are articles dealing with crime news and an accumulation of sensationalism so treated as to excite attention and thus command a circulation. The feature articles, taken at random, bear such titles as "Teenage Sex Orgies Rock Capitol," "Breaks His Leg Trying to Rape Widow 99," "Twice-Raped Girl, 9, Bound, Thrown in River—Survives," "Gov't. Riddled with Homos—Sensational Facts," etc.— these suggest the general pattern of the literature. We can see nothing of any possible value to society in these publications, yet, "[u]nder our system of government there is an accommodation for the widest varieties of tastes and ideas. What is good literature, what has educational value, what is refined public information, what is good art, varies with individuals as it does from one generation to another. . . . What seems to one to be trash may have for others fleeting or even enduring values." *Hannegan* v. *Esquire, Inc.,* 327 U.S. 146, 157, 158.

It may be true, as pointed out by Mr. Justice Black in *Kingsley International Pictures Corporation* v. *Regents*, 360 U.S. 684, 690 (concurring opinion), that "judges possess no special expertise providing exceptional competency to set standards and to supervise the private morals of the Nation." Nevertheless, however unsuited and ill-equipped the judiciary may be to make value judgments as to what books or movies are good or bad, "[i]t remains the duty of those of us who sit in . . . [intermediate appellate] courts to enforce . . . [the statutes] as best we may." *Grove Press, Inc.* v. *Christenberry*, 276 F.2d 433, 436.

Such, then, whether we approve or disapprove, is the temper of our times. Coarse and puerile these tabloids are, but so is much in our civilization. Thus, while these publications are poor writings, bad in taste, offensive in many ways and serving no useful purpose, we doubt that they will pollute the social atmosphere. We hold that they are not obscene within the meaning of the statute defining obscenity (§ 53-244a), as that section must be constitutionally construed in the light of the free press guarantee of the first amendment and the due process clause of the fourteenth amendment.

In the view which we take of this case, this discussion disposes of the appeal. It becomes unnecessary to discuss or decide the issues raised by the other assignments of error.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the publications are not obscene and to dissolve the injunction.

In this opinion PRUYN and KINMONTH, Js., concurred.