## STATE OF CONNECTICUT *v.* JOSEPH S. ANDREWS

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued June 8—decided November 6, 1962

*William A. Jacobs* and *James M. S. Ullman,* for the appellant (defendant).

*George R. Tiernan,* for the appellee (state).

BALDWIN, C. J. This is an appeal from a conviction on each of two counts for the violation of Connecticut's antiobscenity statute. General Statutes § 53-243.[1] The defendant raises three basic claims: (1) § 53-243 is unconstitutional for lack of any explicit scienter requirement; (2) there was no evidence of scienter on his part; and (3) the magazines for the possession of which he has been convicted were not obscene.

In June, 1960, the defendant, Andrews, in part-

---

[1] "Sec. 53-243. OBSCENE LITERATURE AND PICTURES. Any person who buys, sells, advertises, lends, gives, offers or shows, or has in his possession with intent to sell, lend, give, offer or show, any book, pamphlet, paper or other thing containing obscene, indecent or impure language, or any picture, print, drawing, figure, image or other engraved, printed or written matter of like character, or any article or instrument of indecent or immoral use or purpose, unless with intent to aid in their suppression or in enforcing the provisions hereof, or designs, copies, draws, photographs, prints, etches, engraves, cuts, carves, makes, utters, publishes or otherwise prepares, or assists in preparing, anything herein named, shall be imprisoned not more than two years or be fined not more than one thousand dollars or both."

nership with William C. Smith, conducted a news store in the city of Meriden, where they sold magazines, candies and cigarettes. Customers were able without restriction to select magazines from an open-shelf magazine rack about fifteen feet in length. A variety of magazines were exposed for sale, including so-called sex magazines, which were separately displayed. On June 17, 1960, a state police officer in plainclothes purchased in the store two magazines which he had selected from a large display of magazines of a similar character. Smith waited on this officer, took his money, put the magazines in a paper bag and delivered them to him. The magazines purchased on this occasion were "Modern Man—1960 Yearbook of Queens" and "Modern Man," July, 1960, issue. On June 27, 1960, another police officer confiscated (see General Statutes § 54-29) from this store copies of thirteen different sex magazines, including copies of the two purchased ten days previously by the plainclothes officer. Both partners admitted to this officer that the magazines confiscated did not come to them through normal channels but by railway express and personal delivery. Each of the partners subsequently was presented on a four-count information, the first two counts of which charged each of them with having possessed, on June 17 and June 27, 1960, obscene literature and pictures, in violation of § 53-243; in the third and fourth counts each was charged with having, on these same days, displayed and offered for sale unlawful literature to persons under eighteen years of age, in violation of § 53-244. On the motion of each of them, the third and fourth counts were dismissed. Findings of guilty were entered on the counts based on § 53-243. Both men appealed. Inasmuch as the issues in Smith's appeal

are the same as those in Andrews' appeal, the parties stipulated that only the record in Andrews' appeal would be printed and that the judgment in the Andrews case would be conclusive on the parties in the Smith case.

The defendant, Andrews, challenged the constitutionality of § 53-243 in a demurrer which was overruled by the trial court. The defendant contends that the absence in that section of any explicit requirement that an accused have knowledge of the contents of the proscribed material imposes an absolute and strict criminal liability in violation of his rights of freedom of speech and of the press as guaranteed by the first and fourteenth amendments to the federal constitution and by §§ 5 and 6 of article first of the Connecticut constitution. The defendant relies on the 1959 decision of the United States Supreme Court in *Smith* v. *California,* 361 U.S. 147, 80 S. Ct. 215, 4 L. Ed. 2d 205. In that case, an antiobscenity law which had been judicially construed not to include any such scienter requirement was held violative of these federal constitutional guarantees. Our decision of 1958 in *State* v. *Sul,* 146 Conn. 78, 147 A.2d 686, precludes that problem from arising under § 53-243. In that case, we expressly construed § 53-243 (then Rev. 1949, § 8567) as requiring, as an essential element of proof in any prosecution for violation of it, proof of scienter by the accused. Id., 87. Subsequent to the decision in *Smith* v. *California,* supra, the highest courts of several other states have construed similar antiobscenity statutes as including such an implied scienter requirement. *Cohen* v. *State,* 125 So. 2d 560, 563 (Fla. 1960); *Demetropolos* v. *Commonwealth,* 342 Mass. 658, 661, 175 N.E.2d 259 (1961); *State* v. *Oman,* 261 Minn. 10, 110 N.W.2d 514 (1961); *People*

v. *Finkelstein,* 9 N.Y.2d 342, 345, 174 N.E.2d 470 (1961); *State* v. *Jackson,* 224 Ore. 337, 345, 356 P.2d 495 (1960). Our construction of § 53-243 incorporates the scienter requirement into the statute "as definitely as if it had been so amended by the legislature." *People* v. *Finkelstein,* supra; see *Winters* v. *New York,* 333 U.S. 507, 514, 68 S. Ct. 665, 92 L. Ed. 840. The defendant's challenge to the constitutionality of § 53-243 on this ground is without merit.

The defendant's claim that the magazines were not obscene raises an issue with decisive constitutional overtones. The question is whether the allegedly obscene magazines are obscene under § 53-243 and can be forbidden as obscene under the constitutional standards established by the Supreme Court of the United States. See Lockhart & McClure, "Censorship of Obscenity: The Developing Constitutional Standards," 45 Minn. L. Rev. 5, 116; *United States* v. *Keller,* 259 F.2d 54 (3d Cir.); *Capitol Enterprises, Inc.* v. *Chicago,* 260 F.2d 670 (7th Cir.); *Commonwealth* v. *Moniz,* 338 Mass. 442, 443, 155 N.E.2d 762. In *State* v. *Sul,* supra, we did not have before us the material which was alleged to be obscene under the statute. We pointed out (p. 84) that obscenity is not protected by the unconditional language of the first amendment to the federal constitution and that the primary requirements of decency may be enforced by the states by outlawing traffic in obscenity. We cited *Roth* v. *United States,* 354 U.S. 476, 483, 77 S. Ct. 1304, 1 L. Ed. 2d 1498; *Kingsley Books, Inc.* v. *Brown,* 354 U.S. 436, 440, 77 S. Ct. 1325, 1 L. Ed. 2d 1469; and *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 1031. The same principles apply under our state constitution. Conn. Const. art. I §§ 5, 6. In defining, in *State* v. *Sul,*

supra, 85, what constitutes obscenity under § 53-243, we took our text from the opinion of Mr. Justice Brennan, speaking for a majority of five of the United States Supreme Court, in *Roth* v. *United States,* supra. We held that § 53-243 "contemplates a publication, such as a book or pamphlet, which, considered as a whole, has a predominant appeal to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and goes substantially beyond the customary limits of candor in describing or representing such matters." See *Roth* v. *United States,* supra, 487 n.20; Model Penal Code § 251.4 (1). The test is "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." *Roth* v. *United States,* supra, 489.

Following its decision in the *Roth* case, the Supreme Court of the United States, without opinion, found error in four cases in which the United States Court of Appeals had upheld obscenity censorship. They involved (1) the denial of a permit to exhibit the motion picture "The Game of Love"; *Times Film Corporation* v. *Chicago,* 355 U.S. 35, 78 S. Ct. 115, 2 L. Ed. 2d 72, reversing 244 F.2d 432 (7th Cir. 1957); (2) a forfeiture proceeding brought against a collection of nudist and art student publications containing many nude photographs; *Mounce* v. *United States,* 355 U.S. 180, 78 S. Ct. 267, 2 L. Ed. 2d 187, vacating 247 F.2d 148 (9th Cir. 1957); (3) a postal order finding "One—The Homosexual Magazine," unmailable; *One, Inc.* v. *Olesen,* 355 U.S. 371, 78 S. Ct. 364, 2 L. Ed. 2d 352, reversing 241 F.2d 772 (9th Cir. 1957); and (4) a postal order finding nudist material unmailable. *Sunshine Book Co.* v. *Summerfield,* 355 U.S. 372, 78 S. Ct. 365,

2 L. Ed. 2d 352, reversing 249 F.2d 114 (D.C. Cir. 1957). Whether the United States Supreme Court made an independent examination in each case of the allegedly obscene material in question does not appear. We assume that the court applied the standard laid down in *Roth* v. *United States,* supra. See Lockhart & McClure, op. cit., 45 Minn. L. Rev. 35 n.171, for state court decisions on obscenity subsequent to *Roth.*

In *Manual Enterprises, Inc.* v. *Day,* 370 U.S. 478, 82 S. Ct. 1432, 8 L. Ed. 2d 639, the Supreme Court of the United States had before it a ruling of the postmaster general which had been sustained by the United States Court of Appeals in *Manual Enterprises, Inc.* v. *Day,* 289 F.2d 455 (D.C. Cir. 1961). This ruling had barred from the mails a shipment of magazines allegedly obscene and, therefore, unmailable under the Comstock Act. 62 Stat. 768, 18 U.S.C. § 1461. The judgment of the court, reversing the Court of Appeals, was announced by Mr. Justice Harlan in an opinion in which only Mr. Justice Stewart joined. Of the other justices, two did not participate, one concurred in the result, another dissented, and three concurred in the reversal, but on procedural grounds. In his opinion (p. 486), Mr. Justice Harlan states that, under the federal statute, proof of two distinct elements is required: "(1) patent offensiveness; and (2) prurient interest appeal." He then states that whether the magazines are offensive on their face is for the court to decide, and concludes that, judged by community standards of decency (viz., a national standard of decency), they were not obscene. Id., 488, 491.

These five cases offer little guidance in the case at bar. They provide no more specific a definition of obscenity—acceptable to a majority of the

court—than that contained in the *Roth* case, and they deal with the question of a prior restraint on allegedly obscene materials, a problem which is not involved in the case before us. Compare *Near* v. *Minnesota ex rel. Olson,* 283 U.S. 697, 51 S. Ct. 625, 75 L. Ed. 1357, with *Beauharnais* v. *Illinois,* 343 U.S. 250, 72 S. Ct. 725, 96 L. Ed. 919. Subsequent to the *Roth* and *Sul* cases, a new standard for determining obscenity was enunciated by the New York Court of Appeals. In *People* v. *Richmond County News, Inc.,* 9 N.Y.2d 578, 586, 175 N.E.2d 681 (1961), a sharply divided court construed an antiobscenity statute (N.Y. Pen. § 1141) similar to § 53-243 to proscribe only "hard-core pornography." It described "hard-core pornography" as material which "focuses predominantly upon what is sexually morbid, grossly perverse and bizarre, without any artistic or scientific purpose or justification." Id., 587.

The test cannot be solely whether the material is, on its face, under any and all circumstances obscene. Such an objective appraisal would apply what Dean Lockhart and Professor McClure refer to (45 Minn. L. Rev. 76) as a "constant obscenity" concept. It would, for example, bar all pornography for all purposes. Even "hard-core pornography" might not come within the proscription of our obscenity statute if it was to be used for a proper, legitimate purpose. See *United States* v. *31 Photographs* (the Kinsey Institute for Sex Research case), 156 F. Sup. 350, 354, (S.D. N.Y.); note, 34 Ind. L. J. 426; Lockhart & McClure, op. cit., 45 Minn. L. Rev. 70, 71. Mr. Chief Justice Warren, in his concurring opinion in the *Roth* case (354 U.S. 495) aptly observes: "The line dividing the salacious or pornographic from literature or science is not straight and un-

wavering. Present laws depend largely upon the effect that the materials may have upon those who receive them. It is manifest that the same object may have a different impact, varying according to the part of the community it reached. But there is more to these cases. It is not the book that is on trial; it is a person. The conduct of the defendant is the central issue, not the obscenity of a book or picture. The nature of the materials is, of course, relevant as an attribute of the defendant's conduct, but the materials are thus placed in context from which they draw color and character. A wholly different result might be reached in a different setting." Section 54-32 of our statutes exempts "medical textbooks or . . . any other purely medical literature, publication or advertisement" from the application of § 53-243 and of § 54-29, the section providing for the seizure of obscene materials.

In our examination of the case law and legal literature on obscenity, we have found no more specific a definition of what can be adjudged obscene than that contained in *Roth* v. *United States,* supra, 487. Who, then, shall apply it to the facts of a particular case? Mr. Justice Harlan pointed out in a dissenting opinion (354 U.S. 497) that the constitutional question whether a particular book may be suppressed cannot be a "mere matter of classification, of 'fact,' to be entrusted to a fact-finder and insulated from independent constitutional judgment. . . . The suppression of a particular writing or other tangible form of expression is, therefore, an *individual* matter, and . . . raises an individual constitutional problem, in which a reviewing court must determine for *itself* whether the attacked expression is suppressable within constitutional standards." In short, the appellate court cannot escape

this responsibility by saying that the trier of facts, judge or jury, has labeled the questioned matter obscene and that there is some evidence to support such a finding. "[I]f 'obscenity' is to be suppressed, the question whether a particular work is of that character involves not really an issue of fact but a question of constitutional *judgment* of the most sensitive and delicate kind." Id., 497.

Our task in reviewing the judgment of conviction before us is to decide whether, under all the circumstances, the defendant violated § 53-243. This decision necessarily includes a review of the trial court's determination of the question of law as to whether the magazines possessed by him on each of the occasions when he is charged with having violated § 53-243 are obscene within the meaning of the *Roth-Sul* test.

The episode which is the subject of the first count of the defendant's two-count conviction occurred on June 17, 1960. On that occasion, a state police officer purchased the two magazines heretofore mentioned. "Modern Man—1960 Yearbook of Queens," priced at $1, is replete with photographs of nude, seminude and indecently clad females. The subjects of a substantial majority of these photographs are posed against backgrounds and in postures highly suggestive of lascivious activity. Furthermore, this magazine, in the case of both photographs and text, is utterly devoid of any literary or artistic value. Although there are varying degrees of suggestiveness in the photographs, their cumulative effect and dominant theme lack any rational purpose other than to appeal to the prurient interest of the average man.

"Modern Man," in its July, 1960, issue, priced at 50 cents, consists of several narrations with photo-

graphs generously interspersed. The titles of some of the pieces clearly indicate the character of this magazine.[2] Moreover, a reading of the text confirms its outright obscene character. As an illustration, in a story entitled "Tomcat," the illicit sexual relations of one man with four women is described in a way which leaves very little to the imagination. For added stimulation of the prurient interest, the magazine also includes photographs of nude, semi-nude and indecently clad women. Many of them are posed against backgrounds and in postures suggesting and inviting sexual activity. Illustrative of this are the nine photographs on three consecutive pages which, together with a personality profile, appear under the title "A Shapely Saint—Modern Man's Blind Date." Taken as a whole, the text and the accompanying photographs in this magazine are predominantly designed to appeal to the prurient interest of the average man. This magazine, as well as "Modern Man—Yearbook of Queens," was conspicuously displayed for unrestricted perusal and purchase by the general public. The obvious purpose of the magazines is to exploit for gain the curious and sexually immature, the adolescent and those who revel in erotic fantasy. The magazines serve no useful social purpose. Upon an independent examination of each of them, and applying contemporary community standards, we find each of them, under the circumstances of this case, to be obscene.

The episode which is the subject of the second count of the defendant's two-count conviction occurred on June 27, 1960. On that occasion, a police

---

[2] These titles include: "Those Wild Artists and Models Balls"; "G-String Buccaneer"; "Uncovered Cover Girl"; "Piccadilly Pajama Party."

officer confiscated from the shelves in the store of the defendant and his partner thirteen different magazines, including the two we have just reviewed and found obscene. Inasmuch as the possession of the two magazines described above would alone support the conviction on the second count, it is unnecessary for us to adjudicate the individual merits of each of the eleven other magazines. The defendant's claim that there were no obscene magazines to support his conviction on the first and second counts is without merit. *Monfred* v. *State,* 226 Md. 312, 317, 173 A.2d 173, cert. denied, 368 U.S. 953, 82 S. Ct. 395, 7 L. Ed. 2d 386; *State* v. *Chobot,* 12 Wis. 2d 110, 116, 106 N.W.2d 286, dismissed for lack of a substantial federal question, 368 U.S. 15, 82 S. Ct. 136, 7 L. Ed. 2d 85.

The defendant further claims that the evidence was not sufficient to prove that he had knowledge of the obscene nature of the contents of the magazines and that the trial court's finding that he did have such knowledge is not supported by the evidence. The Supreme Court of the United States, in formulating the requirement of scienter in *Smith* v. *California,* 361 U.S. 147, 154, 80 S. Ct. 215, 4 L. Ed. 2d 205, was careful to point out: "Eyewitness testimony of a bookseller's perusal of a book hardly need be a necessary element in proving his awareness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial." Knowledge by a bookseller of the obscene or indecent character of the magazines possessed by him can ordinarily be proved only by circumstantial evidence. *State* v. *Sul,* 146 Conn. 78, 87, 147 A.2d 686; see *State* v. *Heno,* 119 Conn. 29, 32, 174 A. 181; *State* v. *Weiner,* 84 Conn. 411, 417, 80 A. 198. The

defendant admitted to the police officer who confiscated the thirteen magazines that they did not come to the store through normal channels but by railway express and personal delivery. The magazines here involved and those of similar character were displayed separately from other magazines. The two magazines purchased by a police officer on June 17, 1960—"Modern Man—1960 Yearbook of Queens" and "Modern Man," July, 1960, issue— were delivered to him in a paper bag. Two cartons of magazines of the same general kind were found in the back room of the store. The pictures on the covers of these magazines, as well as the titles of articles and the prices listed thereon, were such as would put the defendant on notice concerning the kind of magazines they were. These facts, considered cumulatively, reasonably warrant an inference that the defendant knew the kind of magazines he had for sale. See *State* v. *Chobot,* supra, 119; *Alexander* v. *United States,* 271 F.2d 140, 145 (8th Cir.); *United States* v. *Hochman,* 175 F. Sup. 881, 882 (E.D. Wis.), aff'd, 277 F.2d 631 (7th Cir.), cert. denied, 364 U.S. 837, 81 S. Ct. 70, 5 L. Ed. 2d 61; *People* v. *Zucker,* 15 App. Div. 2d 883, 225 N.Y.S.2d 154, cert. denied, 371 U.S. 863, 83 S. Ct. 116, 9 L. Ed. 2d 100; *People* v. *Finkelstein,* 11 N.Y.2d 300, 304, 183 N.E.2d 661, cert. denied, 371 U.S. 863, 83 S. Ct. 116, 9 L. Ed. 2d 100. The facts were sufficient reasonably to support a finding, at least prima facie, that the defendant was aware of the nature of the contents of the magazines. *State* v. *DelVecchio,* 145 Conn. 549, 553, 145 A.2d 199; *State* v. *Rich,* 129 Conn. 537, 540, 29 A.2d 771. The defendant neither took the witness stand nor offered any evidence. The trial court's finding is buttressed by the unfavorable inference it was entitled to draw from the

defendant's failure to make any explanation or denial of the prima facie case which the state had made out against him. See *State* v. *Pundy,* 147 Conn. 7, 12, 156 A.2d 193; *State* v. *Nelson,* 139 Conn. 124, 127, 90 A.2d 157; 8 Wigmore, Evidence, p. 427 (McNaughton Rev. 1961). For other current legal thinking on this phase of the case, see Model Penal Code, § 251.4 (2), which contains the following statement: "A person who disseminates or possesses obscene materials in the course of his business is presumed to do so knowingly or recklessly." The trial court did not err in finding that the defendant had the requisite knowledge, and in concluding that the defendant was guilty beyond a reasonable doubt.

There is no error.

In this opinion the other judges concurred.