STATE OF CONNECTICUT *v.* JAMES J. ONORATO

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 15-3880

Argued November 18—decided December 17, 1963

*John J. Mangan,* of New Britain, for the appellant (defendant).

*John F. Walsh,* assistant prosecuting attorney, for the appellee (state).

JACOBS, J. The defendant, a bookseller, was convicted of the crime of violating § 53-243 of the General Statutes, which in relevant part, provides: "Any person who . . . sells . . . any book . . . containing obscene, indecent or impure language . . . shall be" punished. Upon oral argument, the defendant conceded the obscene character of the books,[1] and we, in obedience to constitutional requirements, have made for ourselves "an independent constitutional judgment" of the books on the question of their obscenity. *Roth* v. *United States,* 354 U.S. 476, 497 (dissenting opinion). "Wild Flesh," for example, one of the books sought to be condemned, may be characterized as containing a series of wan-

---

[1] The two books involved in this case are "Wild Flesh" and "The Orgy Boys," both written by Don Elliott. Each has on the front cover the legend in bold letters: "This is an original Nightstand Book." Each is a paperback book and is priced at seventy-five cents a copy.

ton, offensive sexual acts of erotic and perverted consummations, of variegated means of accomplishment. It is dismally unpleasant, uncouth and tawdry. It is full of prurient interest appeal. Its repetitive, vivid and minutely descriptive portrayals of the sex act leaves little to the imagination. Its sordid details transcend prevailing limits of decency. "The Orgy Boys" is no better. These books are "utterly without redeeming social importance." *Roth* v. *United States, supra,* 484. We find ourselves in complete agreement with the trial court and counsel that the books are definitely obscene within the purview of the statute, applying the *Roth-Sul-Andrews* test, because, in our opinion, they fall beyond the outer limits of tolerance for literary expression. See *Roth* v. *United States,* supra, 489; *State* v. *Sul,* 146 Conn. 78, 85; *State* v. *Andrews,* 150 Conn. 92, 96; *State* v. *Cercone,* 2 Conn. Cir. Ct. 144, 153.

The defendant also concedes, and properly so, that our antiobscenity statute, as construed and applied by our courts, contains no constitutional infirmity and is therefore invulnerable to attack on constitutional grounds. *State* v. *Andrews,* supra.

The principal contention raised by the defendant in his brief and on oral argument is that the proof fails to establish scienter, that is, "knowledge by . . . [the defendant] of the contents of the book." *Smith* v. *California,* 361 U.S. 147, 149. In that case, the court did not specifically delineate the degree or extent of knowledge of the contents of a book which is required to sustain an obscenity conviction. Mr. Justice Brennan, writing for the majority, suggested, in passing, that something less than full scienter might be sufficient. He carefully noted (p. 154): "We need not and most definitely do not pass today on what sort of mental element is requi-

site to a constitutionally permissible prosecution of a bookseller for carrying an obscene book in stock; . . . we consider today only . . . [a statute] which goes to the extent of eliminating all mental elements from the crime." Mr. Justice Frankfurter, in a concurring opinion, said (p. 161): "How much or how little awareness that a book may be found to be obscene suffices to establish scienter, or what kind of evidence may satisfy the how much or the how little, the Court leaves for another day." He went on to say (p. 164): "Accordingly, the proof of scienter that is required to make prosecutions for obscenity constitutional cannot be of a nature to nullify for all practical purposes the power of the State to deal with obscenity. Out of regard for the State's interest, the Court suggests an unguiding, vague standard for establishing 'awareness' by the bookseller of the contents of a challenged book in contradiction of his disclaimer of knowledge of its contents. A bookseller may, of course, be well aware of the nature of a book and its appeal without having opened its cover, or, in any true sense, having knowledge of the book. As a practical matter therefore the exercise of the constitutional right of a State to regulate obscenity will carry with it some hazard to the dissemination by a bookseller of non-obscene literature. Such difficulties or hazards are inherent in many domains of the law for the simple reason that law cannot avail itself of factors ascertained quantitatively or even wholly impersonally."

Following the decision in *Smith* v. *California,* supra, courts have been called on to grapple with the plaguing problem of scienter in obscenity prosecutions. In *State* v. *Andrews,* supra, 103, our own Supreme Court of Errors quoted with approval and applied a statement in Mr. Justice Brennan's opinion in *Smith* v. *California,* supra, 154: "Eyewitness testimony of a bookseller's perusal of a book hardly

need be a necessary element in proving his aware-ness of its contents. The circumstances may warrant the inference that he was aware of what a book contained, despite his denial." In *State* v. *Jacobellis,* 173 Ohio St. 22, 26, the court observed that it is "in the more ethereal region of theoretical literary endeavor that the principal problem [of scienter] arises. Here . . . the community must be the test. A commercial possessor obviously can not be held to the duty of examining and determining for him-self the obscenity of all matters which pass through his hands, neither, however, can he profess ignorance of that which has become a matter of general knowl-edge in the community. The rule of reason must be applied in these matters." In *State* v. *Oman,* 261 Minn. 10, Justice Gallagher, in a separate concur-ring opinion (p. 22), was impelled to "define what we mean by 'knowledge'" and held (p. 25): "From an examination of the exhibits involved . . . it would seem that a jury could conclude . . . that a rea-sonably prudent person having opportunity to ob-serve would have knowledge of the type of publi-cations he was selling even though he expressly denied such knowledge. It therefore follows that even though the accused should deny knowledge of the contents of the printed matter which he allegedly sold the state should still be permitted to show the facts and circumstances under which the sales were made, and whether from displays, advertisements and other conditions in the seller's place of business it is so obvious that the printed matter was indecent and obscene that any ordinary dealer could observe for himself the nature of the material without investigating each page of its contents." In *People* v. *Harris,* 192 Cal. App. 2d Sup. 887, 893, "a sign and approximately 75 per cent to 90 per cent of the books contained in the book store were received in evidence on the sole issue of intent. While such

evidence of course does not establish that defendant knew the contents of the two subject books in the sense that he had read them, it does tend to establish *scienter* within the requirements of *Smith* v. *California,* supra . . . . It also tends to prove the kind of book selling in which appellant was engaged, all of which has a bearing on *scienter.*" In *People* v. *Williamson,* 207 Cal. App. 2d 839, 845, the court said: "It is necessary that it be established that the defendant knew the contents of the book but it is not necessary to show that he knew it was obscene." And in *State* v. *Roufa,* 241 La. 474, the court held (p. 487): "The criminal intent or guilty knowledge of the defendant . . . [is] a question of fact for the trial court's determination."

In the present case, the defendant owned and operated an establishment in New Britain, under the name of "Jimmy's Quality Smoke Shop," which served as a bus terminal and in which he stocked a large quantity of smoking supplies, books, candy and magazines. He had been associated with this business for some twenty-one years, during last six of which he was the sole proprietor. He was thirty-six years of age and had better than average intelligence. He was present on the premises of his establishment about ten hours a day. On December 20, 1962, he sold the two subject books to William Peifer, a member of the New Britain police department. These books were delivered to Peifer in a paper bag. The court's finding that "[t]he covers [of the books] portray naked women and bear titles and descriptions suggestive of the nature of the material to be found therein" is amply borne out by the exhibits. See *People* v. *Finkelstein,* 11 N.Y.2d 300, 304. "A bookseller may not shut his eyes to something which he should see, nor shut his mind to something which he should know." *State* v. *Cercone,* 2 Conn. Cir. Ct. 144, 154. Moreover, the defendant

had been dealing with All State News Company, Inc., the distributor of "Nightstand" publications, which, in addition to the two books involved in this prosecution, also distributes books with these titles: "Love Addict," "Carnival of Lust," "No Longer a Virgin," "Lesbian Love," "The Wife Swappers," and other publications of similar vintage. Upon all the evidence as disclosed by the record in this case, the court did not err in finding that "[t]he defendant had knowledge of the nature and contents of the books." For other current legal thinking on this phase of the case, Chief Justice Baldwin, in *State* v. *Andrews,* supra, 105, quoted, seemingly with approval, § 251.4 (2) of the Model Penal Code: "A person who disseminates or possesses obscene materials in the course of his business is presumed to do so knowingly or recklessly."[2] The court did not err in concluding that the defendant was guilty beyond a reasonable doubt.

There is no error.

In this opinion PRUYN and KOSICKI, Js., concurred.

---

[2] In his brief the defendant stated, "Possibly the most relevant current thinking on this phase of the case and as a matter of fact on the entire subject of obscene literature, is presently found in what is now the law of [this state] . . . [citing Public Acts 1963, No. 409 (General Statutes §§ 53-244a—53-244m)]. The statute [§ 53-243] under which the appellant was prosecuted has been repealed and is no longer law in this state." Our examination does not disclose that § 53-243 has been repealed; it provides an alternative method of procedure for the outlawry of traffic in obscene literature.