STATE OF CONNECTICUT *v.* BARUCH S. LEWITT

FILE No. CR 15-7362

STATE OF CONNECTICUT *v.* HERBERT S. NITKE

FILE No. CR 15-7391

STATE OF CONNECTICUT *v.* HOWARD E. WILLIAMS

FILE No. CR 15-7363

APPELLATE DIVISION OF THE CIRCUIT COURT

Argued May 3—decided October 8, 1965

*Rogin, Nassau, Caplan & Lassman,* of Hartford, for the appellants (defendants).

*Stanley J. Traceski, Jr.,* assistant prosecuting attorney, for the appellee (state).

LEVINE, J. The issues involved in these three appeals are identical. They were argued together, and a single opinion will suffice for all. The defendant Nitke, the majority stockholder in an outdoor movie and in charge of picture bookings, was convicted of the crime of "aiding an exhibition of indecent or immoral exhibit," in violation of § 53-245 of the General Statutes. The defendant LeWitt, manager of the outdoor theater, and the defendant Williams, the projectionist, were both convicted of the crime of "allowing indecent or immoral exhibition," in violation of the same section. The relevant portion of that section provides: "Any person who produces or aids in the production of any exhibition, opera or performance of any theatrical, operatic, dramatic or vaudeville show or exhibit of a lascivious, sacrilegious, indecent or immoral character" shall be punished. The defendants have appealed, assigning two errors in each case, the first in the conclusion that upon all the evidence the defendant was guilty of the crime charged beyond a reasonable doubt, and the second in the denial of the motion to dismiss at the conclusion of the state's case. Our Supreme Court has stated only too often, as we have, that a motion to dismiss is not appealable, and therefore we do not consider it.

With respect to the first assignment of error, we would, following the usual procedure, examine the evidence to determine if there was proof presented by the state which the court could believe and which

established guilt beyond a reasonable doubt. *State* v. *Pundy,* 147 Conn. 7, 8. However, the cases involving indecency and obscenity stand on a different footing and must be decided on the rule of law stated in such cases as *Jacobellis* v. *Ohio,* 378 U.S. 184, and *State* v. *Andrews,* 150 Conn. 92.

On September 15, 1964, a motion picture, "Daniella by Night," was shown to the audience of the Berlin Drive-In Theater, in the town of Berlin. The picture is concerned with espionage, takes place in several capital cities of Europe, and includes nightclub scenes in which females disrobe until they are clad only in a g-string, so-called, a piece of apparel which is worn over a woman's pubic area and is composed of a small decorated piece of cloth held in place by material resembling string. In one of the scenes, the disrobing is accomplished by two male espionage agents, attempting to find the microfilm which forms the basis of the plot, and the heroine is left wearing a g-string and using her hands and arms to protect her modesty. In another scene, a female performer dances alone fully clothed, moving her body, and her hands over her body. In a third scene in a nightclub, a male dancer places his hands on his female partner's body as part of the performance. In a fourth scene, five female dancers appear clad only in g-strings. These scenes take up five or six minutes, approximately, of the eighty-three minutes required for the running of the picture. The remaining seventy-seven to seventy-eight minutes have to do with the various machinations and activities of the espionage agents and include the usual boy-meets-girl situations.

In all considerations of obscenity, the sense or purport of the discussion includes lascivious or indecent actions and material, so that the cases decided under the heading "obscenity" formulate the

basis and the precedent for interpreting our statute, which contains both words. The United States Supreme Court has determined that motion pictures are included within the protection of the constitutional guarantees of freedom of speech and of the press. "[W]e conclude that expression by means of motion pictures is included within the free speech and free press guarantee of the First and Fourteenth Amendments." *Joseph Burstyn, Inc.* v. *Wilson,* 343 U.S. 495, 502; *Jacobellis* v. *Ohio,* supra; *Smith* v. *California,* 361 U.S. 147. The courts have, however, further stated that this does not mean that every motion picture may be exhibited without consideration for the obscenity it may include. "It does not follow that the Constitution requires absolute freedom to exhibit every motion picture of every kind at all times and all places." *Joseph Burstyn, Inc.* v. *Wilson,* supra. It has also been determined that obscenity is not protected by the first and fourteenth amendments. *Ex parte Jackson,* 96 U.S. 727, 736; *Times Film Corporation* v. *Chicago,* 365 U.S. 43; *State* v. *Sul,* 146 Conn. 78, 84; *State* v. *Andrews,* supra. "But implicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance." *Roth* v. *United States,* 354 U.S. 476, 484. "In an unbroken series of cases extending over a long stretch of this Court's history, it has been accepted as a postulate that 'the primary requirements of decency may be enforced against obscene publications.'" *Kingsley Books, Inc.* v. *Brown,* 354 U.S. 436, 440.

*Jacobellis* v. *Ohio,* supra, 191, repeated the standard or test for motion pictures: "'whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest' . . . . It should also be recognized that the *Roth* standard requires in the first instance a finding that the mate-

rial 'goes substantially beyond customary limits of candor in description or representation of such matters.'" These were the tests laid down in *Roth* v. *United States,* supra. The United States Supreme Court in the *Jacobellis* case added, however, the further requirement that the community standard be determined on a national basis. "We thus reaffirm the position taken in *Roth* to the effect that the constitutional status of an allegedly obscene work must be determined on the basis of a national standard." *Jacobellis* v. *Ohio,* supra, 195.

The standard to be applied by the court is not whether this motion picture would arouse sexual desires or impure sexual thoughts in a particular segment of the community, such as the young or immature, or prudes, or fail to arouse another segment of sophisticates or worldy-wise. The test is the effect of the picture, considered as a whole, upon all those whom it is likely to reach nationally. Its impact upon the national average person and its prurient appeal to her or him determine whether or not it is indecent or obscene. Since no means of determining the national standard or national average person has been set up, and since a court has no ready-made scale to weigh the prurient interest on a national basis, it is incumbent on the judge or the jury to determine this national standard of prurient appeal by his or their objective judgment. "Hence we reaffirm the principle that, in 'obscenity' cases as in all others involving rights derived from the First Amendment guarantees of free expression, this Court cannot avoid making an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected." *Jacobellis* v. *Ohio,* supra, 190. " 'The suppression of a particular writing or other tangible form of expression is, therefore, an *individual* matter, and . . . raises an individual constitutional

problem, in which a reviewing court must determine for *itself* whether the attacked expression is suppressable within constitutional standards.' [*Roth* v. *United States,* supra, 497 (Harlan, J., dissenting).] In short, the appellate court cannot escape this responsibility by saying that the trier of facts, judge or jury, has labeled the questioned matter obscene and that there is some evidence to support such a finding. '[I]f "obscenity" is to be suppressed, the question whether a particular work is of that character involves not really an issue of fact but a question of constitutional *judgment* of the most sensitive and delicate kind.' . . . [Ibid.]" *State* v. *Andrews,* 150 Conn. 92, 100. Thus, we are required to make our own independent judgment, after examining the evidence, as to the prurient appeal of this motion picture, and to weigh it against a national standard which we must determine.

"It may be true . . . that judges 'possess no special expertise' qualifying them 'to supervise the private morals of the Nation' or to decide 'what movies are good or bad for local communities.' But they do have a far keener understanding of the importance of free expression than do most government administrators or jurors, and they have had considerable experience in making value judgments of the type required by the constitutional standards for obscenity. If freedom is to be preserved, neither government censorship experts nor juries can be left to make the final effective decisions restraining free expression. Their decisions must be subject to effective, independent review, and we know of no group better qualified for that review than the appellate judges of this country under the guidance of the Supreme Court." Lockhart & McClure, "Censorship of Obscenity: The Developing Constitutional Standards," 45 Minn. L. Rev. 5, 119. Mr. Justice Black holds to the opposite viewpoint. *Kingsley Interna-*

*tional Pictures Corporation* v. *Regents,* 360 U.S. 684, 690 (concurring opinion). The primary question to be determined is whether this motion picture is indecent or lascivious and therefore obscene and a violation of the statute, or whether it is protected by the rights guaranteed by the first amendment. Section 53-245 contemplates an exhibition "which, considered as a whole, has a predominant appeal to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and goes substantially beyond the customary limits of candor in describing or representing such matters." *State* v. *Sul,* 146 Conn. 78, 85; see *Roth* v. *United States,* supra, 487 n.20.

In *Jacobellis,* supra, 187, the United States Supreme Court said: "Application of an obscenity law to suppress a motion picture thus requires ascertainment of the 'dim and uncertain line' that often separates obscenity from constitutionally protected expression." It went on (p. 191), however, to provide some guide for that "dim uncertain line": "We would reiterate . . . our recognition in *Roth* that obscenity is excluded from the constitutional protection only because it is 'utterly without redeeming social importance,' and that 'the portrayal of sex, *e.g.,* in art, literature and scientific works, is not itself sufficient reason to deny material the constitutional protection of freedom of speech and press.' . . . [*Roth* v. *United States,* supra, 484, 487.] It follows that material dealing with sex in a manner that advocates ideas, *Kingsley Int'l Pictures Corp.* v. *Regents,* 360 U.S. 684, or that has literary or scientific or artistic value or any other form of social importance, may not be branded as obscenity and denied the constitutional protection. Nor may the constitutional status of the material be made to turn on a 'weighing' of its social importance against its prurient appeal, for a work cannot be proscribed

unless it is 'utterly' without social importance."
Further guides are provided by the United States
Supreme Court in five per curiam opinions revers-
ing decisions which held that several types of
material were obscene. See *Grove Press, Inc.* v.
*Gerstein,* 378 U.S. 577 (on the book "Tropic of
Cancer," a tale of the sex experiences of an Ameri-
can author in Paris); *Times Film Corporation* v.
*Chicago,* 355 U.S. 35 (on a film dealing with the
seduction of a sixteen-year-old boy by an older
woman "and other illicit sexual intimacies and
acts"); *Mounce* v. *United States,* 355 U.S. 180, and
*Sunshine Book Co.* v. *Summerfield,* 355 U.S. 372 (on
nudist publications); *One, Inc.* v. *Olesen,* 355 U.S.
371 (dealing with a post office order in respect to
"One—The Homosexual Magazine").

We have viewed the motion picture, and we con-
clude that it is not indecent, immoral or obscene
within the standards set forth in the *Roth, Jacobellis*
and *Sul* cases, supra, since, when it is considered as
a whole, its predominant appeal is not to the pruri-
ent interest of the average person, applying con-
temporary community standards on a national basis.
The decision reached makes it unnecessary to decide
the defendants' other claims of error.

There is error, the judgment in each case is set
aside, and each case is remanded with direction to
render judgment that the defendant is not guilty and
ordering that he be discharged.

In this opinion PRUYN, J., concurred.

KOSICKI, J. (concurring). In my agreement with
the opinion of the majority, I should like to express
the comment, in the words of Mr. Justice Stewart,
concurring in *Jacobellis* v. *Ohio,* 378 U.S. 184, 197,
that we are "trying to define what may be
indefinable." The motion picture involved, devoid

though it may be of any discernible artistic merit and strung on a plot so thin as to be barely perceptible, because of the candid scenes of seductive femininity, does not fall within our understanding of hard-core pornography. Nor do we need to consider whether it has any redeeming social importance. It just is not obscene within the terms of our statute. The disrobing scene, performed behind a shadowy curtain and described in the majority opinion as one of four scenes suggestive of obscenity, however remotely, consumed in all four to five minutes of showing time out of a total of seventy-seven or seventy-eight minutes and, though perhaps from the prosecution viewpoint it was one of the most objectionable in the entire film, was more illustrative of a coarse and vulgar humor than of prurience. The vivacity of the cafe audience within the picture (hopefully transferred into a vicarious participation by the paying customers who had the advantage of being in on the plot) may have been generated by the none-too-subtle but titillating riddle: in which of two possible hiding places was the stolen microfilm secreted? The picture may have been lacking in delicacy and good taste and offensive to our prevailing manners. These deficiencies, however, do not constitute a violation of our obscenity statute. In the introductory blurbs, the continuing subtitles and clumsy double entendres, the producers of the film perhaps promised luridly more than the customers actually got, and, were it not for the public policy involved, a prosecution might reasonably have been considered for obtaining money under false pretenses. As said by Mr. Justice Goldberg in his concurring opinion in *Jacobellis* (378 U.S. at 198), "the exhibitors of this motion picture may not be criminally prosecuted unless the exaggerated character of the advertising rather than the obscenity of the film is to be the constitutional criterion."