[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant Maria Riccio is charged in a one count Amended Information dated March 10, 1995 with the crime of Risk of Injury to a Minor in violation of Connecticut General Statutes § 53-21. In the Amended Information the Assistant State's Attorney charges that during the month of January 1994 at the town of Vernon Riccio did wilfully and/or unlawfully cause or permit the victim, a fifteen year old female, date of birth August 22, 1978, to be placed in a situation where said victim's health was likely to be injured or morals were likely to be impaired by allowing, aiding and assisting the victim in being videotaped and photographed in lingerie and or semi-nude. By pleading dated February 2, 1995 Riccio has filed a Motion to Dismiss the information on the basis that the State has failed to charge an offense since a fifteen year old person may provide a valid consent in a risk of injury case and the fifteen year old alleged victim in this case voluntarily consented to modeling in certain pictures. Additionally, Riccio claims that the Statute under which the defendant is charged is unconstitutionally vague as applied to the circumstances of this case in violation of certain State and Federal Constitutional rights.
The defendant John Krukowski is charged in a five count Amended Information dated March 10, 1995 with the crime of Risk of Injury in violation of Connecticut General Statutes § 53-21. In Count One the Assistant State's Attorney charges that on or about January 5, 1994 at 70-355 Old Town Road in Vernon Krukowski did wilfully and/or unlawfully cause or permit the victim, a fifteen year old female, date of birth August 22, 1978, to be placed in a situation where her health was likely to be injured or morals were likely to be impaired by videotaping the victim in lingerie and/or semi-nude and by making suggestive and sexual in nature comments to the victim. In the Second Count, while the date and place of the alleged criminal offense is the same, and while the general statutory allegation is the same and pertains to the same victim, the specific conduct alleged is that Krukowski assisted and aided in photographing the victim in lingerie and/or semi-nude. The Third Count repeats the behavioral allegations of the Second Count except that it alleges that the behavior took place on January 13, 1994 at the town of Vernon. The specific behaviors alleged in the Fourth Count are that Krukowski did on January 20, 1994 at 70-355 CT Page 1420-LLL Old Town Road in Vernon aid in photographing the victim while semi-nude. Finally, the Fifth Count contains the same factual allegations as the Fourth Count except that it claims the defendant's behaviors took place on January 26, 1994.
By pleading dated August 22, 1994 the defendant Krukowski has moved to dismiss the charges against him on the basis that Connecticut General Statutes § 53-21 and § 53a-194 are unconstitutionally vague and over broad on their faces in that they purport to regulate First Amendment activity, and that the Statutes are unconstitutionally vague as applied to the defendant Krukowski in this case. Additionally the defendant claims that there are insufficient grounds to prosecute the defendant or to proceed to trial upon the charges. Finally, the defendant Krukowski claims that his prosecution for this charge violates his constitutional right to due process, fair warning and the guarantee against standardless law enforcement. Subsequent to the date on which Krukowski filed his Motion to Dismiss, the Assistant State's Attorney filed an Amended Information in which she has not charged the defendant with a violation of C.G.S. § 53a-194. Consequently, this Memorandum will deal with the issues raised as they pertain to C.G.S. § 53-21 only.
The defendant Paul Duckett is charged in a four count Amended Information dated March 10, 1995. In Count One the Assistant State's Attorney charges Duckett with the crime of Risk of Injury to a Minor in violation of C.G.S. § 53-21 in that on or about January 5, 1994 at 70-355 Old Town Road in Vernon he did wilfully and/or unlawfully cause or permit the victim, a fifteen year old female, date of birth August 22, 1978, to be placed in a situation where her health was likely to be injured or morals likely to be impaired by photographing the victim in lingerie and/or semi-nude. Count Two repeats the behavioral allegations of Count One and claims that Duckett's criminal activity took place on January 13, 1994 in Vernon. Count Three is essentially the same as the previous two counts except that it charges Duckett with behaviors occurring on January 20, 1994 at 70-355 Old Town Road in Vernon. And this count alleges that Duckett photographed the victim semi-nude. Finally Count Four contains conduct allegations identical to those claimed in Count Three but alleges that this behavior took place on January 26, 1994. By pleading dated August 29, 1994 the defendant Duckett filed a Motion to Dismiss the charges against him on the basis that the State has failed to charge an offense since a fifteen year old person may provide a valid consent in a risk of injury case and the victim in this case was over the age of fifteen CT Page 1420-MMM and voluntarily consented to the taking of certain pictures. Additionally, Duckett claims that C.G.S. § 53-21 is unconstitutionally broad as applied to the circumstances of this case in violation of certain State and Federal Constitutional rights.
The court heard oral argument on all defendants' motions to dismiss at the same time. Additionally, the defendant Krukowski and the State have submitted a joint Stipulation of Facts regarding Krukowski's Motion to Dismiss. cf. Court Exhibit 2, Stipulation of Facts, dated January 12, 1996. The parties agreed that this Stipulation of Facts may be utilized in considering all the pending motions to dismiss.
The court makes the following findings and rulings.
On January 31, 1994 Detective Don Skewes of the Vernon Police Department met with Juvenile Court Advocate Joseph Kristan concerning a fifteen year old juvenile, M., who had run away from Vernon and had been located in Cape Cod, Massachusetts. The detective had earlier spoken with M.'s mother, Marie Riccio, who had reported M. as a runaway. The Juvenile Court Advocate Kristan told Detective Skewes that he had a conversation with a Juvenile Prosecutor, Roger Jackson, from Cape Cod who reported to him that M. had revealed to the Juvenile Prosecutor that she had gone through photographic sessions with her Agent John Krukowski and that some of the photos were of M. semi-nude. Skewes then spoke directly with Jackson who informed him that M. had reported to Jackson that she had received training as a model at age (14) fourteen. She indicated that during January of 1994 she hired John Krukowski as her agent and Krukowski made arrangements with a photographer Paul Duckett to have photo sessions with M. at her home. M. further reported to Jackson that these sessions consisted of photos of M. dressed in clothing, bathing suits, lingerie and also semi-nude. M. also indicated to Jackson that her mother had given written permission for her to participate in these photo sessions. M. identified the location of the photo sessions as Unit 355 in the Ryefield II Condos, Vernon Connecticut, and she gave her mother's address as 42 Rangehill Drive, Vernon, Ct.
Detective Skewes also spoke directly with M. who indicated to her that Krukowski lives in Unit 355 of the Ryefield II Condos and that the photo sessions as well as a video took place in the cellar of the condo. Additionally, she indicated that some photos were taken at her mother's house at 42 Rangehill Drive, Vernon. She stated that the photo's taken at her mother's house included poses CT Page 1420-NNN in lingerie, bathing suits as well as semi-nude. She indicated that the photos were taken by Paul Duckett and that Krukowski took the video. She estimated that sixty (60) to eighty (80) photos were taken of her during the month of January 1994. She also indicated while she had a few of these photos, Duckett and Krukowski had the majority.
In her conversation with Detective Skewes, M. also explained that Krukowski runs a "Philippine Dating Service" business out of his Vernon condo and that in this company, called "Asian Mystique", Krukowski deals primarily with Philippine and Asian women.
Skewes later received a phone call from the defendant Riccio asking about the case and the police intentions. In this conversation, Skewes explained to her his concern with the semi-nude photography and the video with M. in her lingerie. In this conversation Riccio confirmed to Skewes that she had authorized these photo and video for M. and that she was aware that there may be some nudity involved but she felt the photos of M. nude were tastefully done. In this conversation Riccio indicated that M.'s portfolio was at her home and that the detective was welcome to it. During this conversation Riccio informed Skewes that she had already contacted Krukowski and had informed him of the police investigation.
Subsequently, Detective Skewes and Lieutenant Greenier went to Krukowski's residence at the Ryefield Condos. They knocked on the door and were greeted by Krukowski to whom they identified themselves as police officers wishing to speak with him. Krukowski opened the door and allowed the officers entry to his home while indicating that he had been expecting them and was willing to cooperate with the investigation. In conversation Krukowski indicated that he runs a Philippine correspondence service, a listing of women who men can write to overseas. He also indicated that he was starting a modeling agency and was trying to find suitable models. Krukowski then freely showed the officers six (6) black and white photos of M., three of which showed her partially nude. One of the photos was a side view of M. with no top on. This photo showed the side view of M.'s right breast. The other two photos showed her standing with an unbuttoned silk shirt and panties on with both breasts partially exposed. Krukowski also showed the officers several contracts which were in his computer. These contracts indicated that M. was fifteen years old, that her mother, defendant Riccio, was giving permission for the photos to be taken. The contracts also contained a provision allowing semi-nude CT Page 1420-OOO photographs to be taken.
During this conversation Krukowski told the officers about a video tape he had made of M. at his condo in which she was modeling bikini bathing suits, lingerie and other clothing. The officers viewed the video. During the video Krukowski can be heard to tell M. to "seduce the Camera', to "act Sexy", to "Run your hand over your body and entice me like you want to . . .". In this video Krukowski zooms in to show close up shots of M.'s breasts and genital area. Krukowski asks M. in the video if she shaves her legs and questions her "What about up around . . .? You do a lot of trimming up top?" In this questioning he was referring to the pubic area. The court observed that at one point in the video while M. is clad in lingerie, Krukowski can be heard telling her to take her jacket off and "don't be afraid." M. can be seen to hesitate and to state that she is nervous. During this video one can see strobe flashes and hear the sound of the automatic winding motor of a camera after each flash.
Upon viewing the video and photographs the officers determined that they were criminal in nature. Additionally they decided that the written contracts were evidence of criminal activity. These items were seized.
During this visit to Krukowski's home he indicated that approximately eighty photographs had been taken of M., and that most of the negatives, proofs and contracts of M. were in the possession of Duckett. He indicated that Duckett uses these photographs for his portfolio as a professional photographer.
In Krukowski's residence, the computer system was in plain view. Additionally, he voluntarily showed his studio room to the officers. While they were present in Krukowski's home they noted the video camera used for Krukowski's modeling sessions lying on the couch in the living room. From Krukowski's home the officers seized the property listed as Attachment A-2 to Court Exhibit 2, the parties Stipulation of Facts regarding this motion.
On February 1, 1994 Detective Skewes received a faxed statement taken by Detective Reid Hall of the Barnstable Police Department in Massachusetts from M. in which M. indicated that her mother, the defendant Riccio, Paul Duckett, and John Krukowski and Krukowski's wife were all present at Krukowski's Condo when the video of M. was done. She indicated that her mother, Riccio, had brought approximately (12) articles of clothing and lingerie to the CT Page 1420-PPP Condo and Krukowski then decided which of them M. would wear in the video. She wore a black lace piece of lingerie that ties in the front and a light blue piece of lingerie with lace in the chest area in the video. M. further stated that on January 13, 1994 Krukowski and Duckett went to her home and with Riccio present M. was photographed in her mother's bedroom wearing her mother's lingerie. She indicated that in one shot she was wearing a silk white top that partially covered her nipples and she wore a pink dress that exposed her from mid chest down to her calves. M. further indicated that on January 20, 1994 she went to Krukowski's home for a photo session with him and Duckett and that during the photo session photographs were taken of her with her nipples exposed. M. also indicated that on January 26, 1994 she returned to Krukowski's home for another photo session where Krukowski, Duckett and a friend of her's were present. During this photo session, M. indicated she wore a pair of jeans and no top or bra when photos were taken. She stated that she would receive one photo for each hour of photo sessions as payment for modeling.
According to the contract Riccio signed as legal guardian for M., the modeling agency "who's parent name is Asian Mystique Connection" was authorized the ". . . use and publication of photos, images, information that have come in to the agency possession for the purpose of securing modeling positions and or agency self promotion." cf. State's Exhibit 4. Similarly, the agreement signed by M. as well as Riccio captioned "Model Release" granted to Paul Duckett the ". . . right and permission to copy right and/or use, reuse and/or publish, and republish photographic pictures or portraits of M . . . for any purpose whatsoever." cf. State's Exhibit 14.
The victim in these cases, designated M. by the court, was born on August 22, 1978. Therefore, during January 1994 she was fifteen years of age. Each of the defendants was aware of the victim's age on the dates of their alleged criminal misconduct.
Photographs taken by Duckett of the victim included eleven (11) contact sheets which showed M.'s partially nude breasts partially showing, M. wearing woman's lingerie, wearing a heavy jacket topless with both breasts partially exposed, M. wearing panties and a lingerie top partially showing her breasts as well as photos of M. in two piece bathing suits and a few where she is fully clad.
In an oral interview with Detective Skewes, M. reported that CT Page 1420-QQQ at times she was forced to participate in the photo sessions by the defendant Riccio who threatened to burn her portfolio if she did not complete her commitment with Krukowski.
During the session at Krukowski's home in which M. was photographed and video taped simultaneously Duckett questioned Krukowski's need to continue the video tape once Duckett had finished taking still photographs. In response Krukowski told Duckett his purpose was to get M. in poses. Duckett told Krukowski that he should destroy the video that was taken during the photo session.
The defendant claims that C.G.S. § 53-21 is void for vagueness. This doctrine involves two precepts; "the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement." State v.Schriver, (citations omitted), 207 Conn. 456 (1988). The constitutionality of the challenged statute is to be determined by the statute's applicability to the particular facts at issue.State v. Perruccio, (citations omitted), 192 Conn. 154 (1984). order to surmount a vagueness challenge, "a statute must afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited." Id at 460. Additionally, ". . . a facially vague law may nonetheless comport with due process if prior judicial decisions have provided the necessary fair warning and ascertainable enforcement standards." Id at 461.
When analyzing a penal statute, a court must construe the statutory language strictly to avoid imposing criminal liability where the legislature intended none. "It is not necessary, however, that a statute list the precise conduct prohibited or required . . . It is recognized that the law may be general in nature . . ." (citation omitted), State v. White, 204 Conn. 410
(1987). A person challenging the constitutionality of a statute on the basis of vagueness must show that ". . . a reasonable person could not have foreseen that the statute would be applied to his conduct, or that he was the victim of arbitrary enforcement." State v.Indrisano, 228 Conn. 795 (1994).
"(A) penal statute may survive a vagueness attack solely upon a consideration of whether it provides fair warning. . . .References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning."Perruccio, supra at 159. Prior judicial decisions which delineate CT Page 1420-RRR a statute's reach can constitute sufficient notice of the acts prohibited to render the statute constitutional as applied to the particular facts of a case. State v. Pickering, 180 Conn. 54
(1980).
In previous decisions, the Court has held that C.G.S. § 53-21
proscribes two general types of conduct; "(1) the deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare, and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical wellbeing." Perruccio, supra at 159. The defendant in this matter is charged with conduct proscribed by the first part of the statute. The Court has noted that it is not necessary to have any touching of any part of the body to be in violation of the statute: the creation of a prohibited situation is sufficient. Id at 159. The Court has dealt explicitly with the taking of nude and semi nude photographs of children. In State v.Palangio, the Appellate Court indicated, "It is indisputable that protecting the physical and psychological well-being of children is a compelling as well as legitimate state interest . . . (citations omitted) . . . The first part of 53-21 focuses on a defendant's deliberate indifference to, acquiescence in, or the creation of, situations inimical to the child's moral or physical welfare. Thus, it is the defendant's creation of the situation in which children were posed in various stages of undress and in various types of clothing that is prohibited." 24 Conn. App. 300 (1991), Cert. Denied, 218 Conn. 911 (1991). The court in Palangio noted that prior judicial decisions had specifically concluded that the photographing of a nude or semi-nude minor violated the C.G.S. § 53-21. Id at 304, citing State v. Hauck, 172 Conn. 140 (1976), and State v. Manluccia, 2 Conn. App. 333, cert. denied, 194 Conn. 806
(1984). In Palangio the court noted: "These decisions, therefore, have provided the defendant with fair notice that he need not physically touch a child to violate § 53-21 and that the photo-graphing of nude and seminude children is prohibited. Id at 304. C.G.S. § 53-21, as applied to the conduct charged to the defendant, is not void for vagueness.
The defendant argues that the behavior is constitutionally protected speech. The court disagrees. Free speech as a constitutional entitlement is not absolute. cf. State v. Andrews,150 Conn. 92 (1962); Giboney v. Empire Storage Co., 336 U.S. 490, (1949). Nor will a claim of artistic value override what is otherwise evidence of criminal activity. State v. Zarick,227 Conn. 207 (1993). CT Page 1420-SSS
The defendant claims, however, that M. consented to the activity. It is the defendant's hypothesis that since a minor who is fifteen years of age may consent to sexual contact under Connecticut's Penal Code, and M. consented to the conduct with which the defendant is charged, the defendant can not be prosecuted for the charged behavior. The court disagrees. The defendant is not charged with a violation of C.G.S. § 53a-73a which proscribes sexual contact with certain categories of people. The behavior proscribed in the Sexual Assault Statutes is not identical to the behavior proscribed by C.G.S. § 53-21. It is for this reason that the Connecticut Supreme Court has held that a defendant's conviction of both sexual assault and risk of injury is not constitutionally impermissible. cf. State v. McCall, 187 Conn. 73
(1982). The defendant's argument would, perhaps, have more vitality if the defendant had been charged under the second portion of C.G.S. § 53-21 which proscribes direct sexual acts upon the person of a minor. In that circumstance, one's consent to sexual contact may be a defense to a Risk of Injury charge. cf. State v.Perruccio, 192 Conn. 154 (1984). In this case, however, the general consent of M. to be photographed in semi-nude poses and in lingerie, if, in fact, it was validly given, need not be construed as a matter of law as consent to being placed in a situation where her health was likely to be injured or her morals likely to be impaired. The court is aware of no decision, relevant to this context, holding that a minor may consent to being placed in situation where her health is likely to be injured or her morals likely to be impaired as charged in this information.
Finally, the defendant claims that the Supreme Court has held that for culpability under the section of C.G.S. § 53-21 a defendant's acts must have been sexually explicit. cf. State v.Kulmac, 230 Conn. 43 (1994). The defendant's argument is misplaced. In Kulmac, the Court was discussing "acts" as referred to in the second portion of C.G.S. § 53-21 which, in part, proscribes ". . . any act likely to impair the health or morals of any such child". And in its discourse, the Court referred to its earlier statement in State v. Shriver, that the language of C.G.S. § 53-21
proscribing acts likely to impair the morals of a child relates to acts performed "in a sexual and indecent manner." Shriver, supra at 466-67. The defendant in this case is not charged under the "acts" portion of the Statute. The Kulmac language was not directed toward that portion of the Statute under which the defendant is charged. CT Page 1420-TTT
For the foregoing reasons, the defendant's Motion to Dismiss is denied.
Bishop, J.