STATE OF CONNECTICUT *v.* JAMES MAGEE

FILE No. 61

STATE OF CONNECTICUT *v.* JOSEPH KEANE

FILE No. 62

STATE OF CONNECTICUT *v.* LOUIS WELSH

FILE No. 63

STATE OF CONNECTICUT *v.* RONALD DOWSETT

FILE No. 66

APPELLATE SESSION OF THE SUPERIOR COURT

Argued September 10—decided November 28, 1975

*Leonard A. Kamaras,* of the Rhode Island bar, and *Peter P. Buscemi,* for the appellants (defendants).

*Guy W. Wolf III,* assistant prosecuting attorney, for the appellee (state).

DAVID M. SHEA, J.  Although the facts underlying the arrests of each of these defendants differ in some inconsequential respects, the cases were transferred from the circuits in which they arose to another circuit for trial before the same judge because of the similarity of the issues involved.  The defendants have been represented by the same counsel at the trial and during the appeals.  The issues raised in each appeal are identical.

On various dates between August 24, 1972, and October 26, 1972, the same state policeman entered bookstores located in Norwich, Groton, New London, and Manchester, each store being operated by one of the defendants.  From display racks in each store the officer selected some sex magazines and, after some conversation concerning the items, he purchased them from each defendant.  Three of the defendants sold him motion picture films as well as magazines, and the fourth defendant gave him also a cartoon booklet.  The conduct or conversation of each defendant indicated that he was aware of the contents of the items involved.  No claim has been made that the finding of scienter made by the trial court with respect to each defendant is not supported by the evidence.

The publications collected in these police investigations bear the following titles: "Sensuous Strangers," European Series 106; "Apartment Sinners"; "Climax," Sex Porno Danish International No. 209; "Danish Pastry"; "Climax," Sex Porno Danish International No. 106; "Swallow It"; and "Blondie and Connie/Moon Mullins."  The films are entitled "Bang One," "V-9" or "Vex-9," and "Den 151."  Those materials consist almost entirely of photographs or, in one instance, of cartoon drawings of unclad men and women, sometimes in groups, engaging in a variety of sexual activities, with genitals prominently displayed.  They fall within the

category of "hard core" pornography as described in these cases: *Hamling* v. *United States,* 418 U.S. 87, 92; *Miller* v. *California,* 413 U.S. 15, 18; *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 51; *United States* v. *Wild,* 422 F.2d 34, 36; *State* v. *Andrews,* 150 Conn. 92, 101. In their briefs the defendants make no contrary assertion nor do they claim that the materials, including the relatively few written articles, have any "redeeming social value."

Several assignments of error, including all of those relating to rulings upon evidence, have not been briefed and are deemed abandoned. *Fleischer* v. *Kregelstein,* 150 Conn. 158, 159; Maltbie, Conn. App. Proc. § 327. Two of the points raised in the briefs of the defendants relating to the contents of the memorandum of decision and a memorandum denying a motion to dismiss were never referred to in the assignment of errors, and they were expressly abandoned during argument. Assignments of error cannot be addressed to statements in a memorandum but only to the findings, conclusions, and rulings of the trial court. *Coleman* v. *Bent,* 100 Conn. 527, 529; Maltbie, op. cit. § 152.

## I

The defendants attack the constitutionality of the obscenity statute under which they were convicted, General Statutes § 53a-194, for vagueness and overbreadth. The pertinent portion of that statute provides as follows: "A person is guilty of obscenity when, knowing its content and character, he promotes, or possesses with intent to promote, any obscene material or performance." General Statutes § 53a-193 (a) defines the word "obscene": "Any material or performance is 'obscene' if, (1) considered as a whole, its predominant appeal is to prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism,

(2) it goes substantially beyond customary limits of candor in describing or representing such matters, and (3) it is utterly without redeeming social value . . . ." The word "promote" is defined in General Statutes § 53a-193 (e) as meaning "to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, advertise, produce, direct or participate in."

It is a constitutional requirement that a criminal statute be sufficiently explicit to inform a person of ordinary intelligence of what conduct on his part is prohibited. *United States* v. *Harriss,* 347 U.S. 612, 617; *Connally* v. *General Construction Co.,* 269 U.S. 385, 391. In *State* v. *Sul,* 146 Conn. 78, a claim of vagueness directed toward an earlier obscenity statute (General Statutes, Rev. 1949, § 8567), which used the words "obscene, indecent or impure" in describing the banned material, was rejected, although the attack seems to have been concentrated upon the word "impure." In order to sustain its validity the scope of the statute was expressly confined to the standards for judging obscenity established in *Roth* v. *United States,* 354 U.S. 476, 487. "Section 8567 contemplates a publication, such as a book or pamphlet, which, considered as a whole, has a predominant appeal to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and goes substantially beyond the customary limits of candor in describing or representing such matters." *State* v. *Sul,* supra, 85. In *State* v. *Andrews,* 150 Conn. 92, 97, which also considered the constitutionality of the earlier statute, that definition of "obscenity" as used in the statute was reaffirmed. In two Circuit Court cases the earlier statute was also construed as embodying the *Roth* tests for obscenity. *State* v. *Cercone,* 2 Conn. Cir. Ct. 144, 148; *State* v. *Keyhole Publishing*

*Co.,* 3 Conn. Cir. Ct. 354, 358. Similarly, after certain requirements that the material be utterly lacking in social value and that a national standard rather than a community standard be used were imposed in *Memoirs* v. *Massachusetts,* 383 U.S. 413, and in *Jacobellis* v. *Ohio,* 378 U.S. 184, the statute was viewed as encompassing those modifications of the *Roth* tests. *State* v. *Onorato,* 3 Conn. Cir. Ct. 438. These interpretations of the earlier obscenity statute were adopted in fulfilment of the obligation of the judiciary to attempt to achieve a construction of a statute which will support its constitutionality. *Adams* v. *Rubinow,* 157 Conn. 150, 153.

It is apparent that the definition of "obscenity" which the legislature adopted by enacting General Statutes § 53a-193 (a) expressly incorporates the *Roth-Memoirs* tests, which the courts of this state had used to construe the earlier statute.[1] Consequently, the claim that General Statutes § 53a-194 suffers from the constitutional infirmity of vagueness is foreclosed by the decision of our Supreme Court in *State* v. *Andrews, supra,* which formulated the definition of "obscenity" which the statute uses, absent some contrary development of federal law.

It has been consistently held that obscene material is not protected by the First Amendment. *Miller* v. *California,* 413 U.S. 15, 23; *Kois* v. *Wisconsin,* 408 U.S. 229, 230; *United States* v. *Reidel,* 402 U.S. 351, 354; *Roth* v. *United States,* 354 U.S. 476, 485. The difficulty has been to decide what falls within that category. *Jacobellis* v. *Ohio,* 378 U.S. 184, 197, 201. In *Miller* v. *California,* 413 U.S. 15, 23 *(Miller I),* the currently prevailing guideline for obscenity reg-

---

[1] The obscenity statute under which the defendants were convicted did not specify that a national standard, required by *Jacobellis* v. *Ohio, supra,* should be used. After the decision in *Miller* v. *California,* 413 U.S. 15, it was amended to specify a community standard, as was permitted by that decision which overruled *Jacobellis* in that respect.

ulation was enunciated as follows: "State statutes designed to regulate obscene materials must be carefully limited. See *Interstate Circuit, Inc.* v. *Dallas, supra* [390 U.S. 676, 682]. As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

"The basic guideline for the trier of facts must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, *Kois* v. *Wisconsin, supra,* at 230, quoting *Roth* v. *United States, supra,* at 489; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. . . . If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary."

The statutes reviewed in *Miller I* (California Penal Code §§ 311, 311.2) are similar to the statutory framework established by General Statutes §§ 53a-193 and 53a-194, the definitions of "obscenity" being virtually identical. The judgment in *Miller I* remanded the case for consideration by the Superior Court, Appellate Department, Orange County, Cali-

fornia. The state court reaffirmed its previous judgment and upheld the validity of the California statutes involved under the *Miller I* tests, reaching the same conclusion which had been arrived at in *People* v. *Enskat,* 33 Cal. App. 3d 900. The *Miller* case was again appealed to the United States Supreme Court where the appeal was dismissed without opinion for want of a substantial federal question. *Miller* v. *California,* 418 U.S. 915 (*Miller II*). Because the appeal in *Miller II* was taken from a decision upholding the California statutes against federal constitutional attack, it has been held that this dismissal was an adjudication, binding upon the federal courts, as to the validity of those statutes under the criteria established by *Miller I.* *Hicks* v. *Miranda,* 422 U.S. 332. It is clear, therefore, that our corresponding obscenity statutes, §§ 53a-193 (a) and 53a-194, are presently immune from attack upon the grounds of vagueness or overbreadth at the federal level.

Even without the statutory definition of "obscenity" contained in § 53a-193 (a), the use of that word in § 53a-194 would be sufficiently precise. Long before *Miller I,* "obscenity" had become a word of art carrying a restricted meaning. *State* v. *Andrews,* 150 Conn. 92. It has been held that prior judicial construction of the term "obscenity" which has sufficiently confined its general import will qualify a statute under the test of *Miller I,* although the legislature may leave the word wholly undefined. *Hamling* v. *United States,* 418 U.S. 87, 113.

## II

It is also claimed that the trial court erroneously gave a retroactive application to the revisions in the *Roth-Memoirs-Jacobellis* standards effectuated by *Miller I,* which was announced on June 21, 1973.

Although the trial of the present cases took place after that date, the offenses charged were based upon prior events. The federal courts have held that *Miller I* may not be applied retroactively if a defendant would be harmed but that it should be so applied if a defendant would benefit. *United States* v. *Jacobs,* 513 F.2d 564; *United States* v. *Sherpix, Inc.,* 512 F.2d 1361; *United States* v. *Wasserman,* 504 F.2d 1012. That benign approach to the retroactivity problem is of no assistance to these defendants, however, since the trial court found the materials to be obscene both under the *Roth-Memoirs-Jacobellis* tests and also under the *Miller I* revisions. *Miller I* abandoned the national standard of *Jacobellis* for judging obscenity and substituted the test of whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest. Precisely that phraseology is used in one paragraph of the finding to indicate that the materials involved were obscene under that test. In another paragraph the trial court found that the materials "were patently offensive because they affronted any standard the legislature or a court could have articulated. The multiple and variegated ultimate acts of sexual perversion would have been regarded as obscene by the community standards of Sodom and Gomorrah." Biblical scholarship is not necessary to comprehend the significance of that bit of judicial rhetoric. The trial court concluded that in no civilized community in the world would the materials involved be found inoffensive. The substitution in *Miller I* of the test of whether the material "lacks serious literary, artistic, political, or scientific value" for the *Memoirs* standard of whether it is "utterly without redeeming social value" is also of no significance to these defendants, since the materials which they sold were expressly found to be obscene under both tests.

In fulfilment of our duty as an appellate tribunal we have examined the items in evidence and find ourselves in agreement with the trial court that they are obscene whether pre-*Miller I* or post-*Miller I* criteria are applied. *Jacobellis* v. *Ohio,* 378 U.S. 184, 190.

### III

The further claim is made that it was essential for the state to have presented expert testimony on the subject of obscenity. That contention has been rejected by the United States Supreme Court. *Hamling* v. *United States,* 418 U.S. 87, 100; *Kaplan* v. *California,* 413 U.S. 115, 120. "This is not a subject that lends itself to the traditional use of expert testimony. . . . No such assistance is needed by jurors in obscenity cases; indeed the 'expert witness' practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony." *Paris Adult Theatre I* v. *Slaton,* 413 U.S. 49, 56 n.6. Of course, in an obscenity case involving materials bizarre in content, where the appeal may be directed to the prurient interest of a sexually deviant group, such testimony may be helpful and even necessary. *Paris Adult Theatre I* v. *Slaton,* supra; *Mishkin* v. *New York,* 383 U.S. 502; *United States* v. *Klaw,* 350 F.2d 155. In the present cases the stimulative effect of all the materials involved is evident to anyone of normal sexual orientation.

### IV

In elaborating upon the conclusion that the materials lacked any redeeming social value, the trial court found that each defendant "was exploiting pornography for its own sake and was blatantly pandering to prurient interests for commercial gain alone." The defendants claim that the use of the word "pandering" indicates that they were found

guilty under the so-called "pandering doctrine" of *Ginzburg* v. *United States,* 383 U.S. 463, but that the evidence is insufficient for its application. "Where an exploitation of interests in titillation by pornography is shown with respect to material lending itself to such exploitation through pervasive treatment or description of sexual matters, such evidence may support the determination that the material is obscene even though in other contexts the material would escape such condemnation." Id., 475. In these cases there was no evidence of any advertising permeated by the "leer of the sensualist" sufficient to invoke this principle. It is clear from the context, however, that the term "pandering" was not used by the trial court in the technical *Ginzburg* sense but in the general connotation of providing gratification for the desires of others. Webster, Third New International Dictionary. The obscene nature of the materials sold by these defendants is so readily apparent that any reliance upon the *Ginzburg* rule would have been superfluous.

There is no error.

In this opinion Speziale and Sponzo, Js., concurred.