STATE OF CONNECTICUT *v.* LEIF NELSON

APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 1152

Argued October 20, 1981 – decided April 2, 1982

*James D. Reardon,* for the appellant (defendant).

*Linda L. Mariani,* deputy assistant state's attorney, with whom, on the brief, was *Thomas M. Griffin, Jr.,* deputy assistant state's attorney, for the appellee (state).

SHEA, J. The trial court found the defendant guilty of a breach of the peace in violation of General Statutes § 53a-181. In appealing from that judgment,

the defendant has raised three issues: (1) whether the inclusion in the court file of a "letter of complaint" which he had sent to the Connecticut state police department concerning the conduct of the arresting officer prejudiced him in any way; (2) whether the police officer was justified in stopping him as he walked along the highway, the act which he claims precipitated his ultimate arrest; and (3) whether the language which the officer testified that the defendant used was sufficiently vituperative to constitute a breach of the peace under the statute.

There is little dispute about the facts which the trier would have been justified in finding from the evidence. At about 1 a.m. on March 14, 1981, a state police officer who was on patrol duty observed the defendant carrying a grey jacket as he walked along Halls Road in Old Lyme across from a shopping center. An hour earlier, the officer had been assigned to investigate a report of a stolen motorcycle and had spoken to a constable of the town. The constable said that at about 11:30 p.m. in the vicinity of Halls Road, he had chased a teenaged white male with sandy brown hair who was wearing a grey jacket and operating a motorcycle which carried a passenger. The defendant had blond hair. The officer was aware that there had been numerous burglaries in the general area where the defendant was walking and decided to ascertain his identity. He stopped his police cruiser in the road next to the defendant, sounded his horn as a signal for the defendant to stop walking and got out of the car. The defendant responded by turning toward the officer, coming to a position of military attention and saluting the officer. When he was asked where he was going, the defendant replied: "Up the road." To the query of where he was coming from, he responded: "Down the road." He said he had no identification when the officer made such a request. He asked why he was being "hassled" when asked for his name, but he did give his name,

Leif Nelson, when the officer assured him that he was not being "hassled." The officer recognized the name and remembered that he had arrested the defendant on a previous occasion. He continued to question the defendant about where he had been going. At that point the defendant addressed several vituperations[1] to the officer. When he continued to do so despite the officer's request to stop, he was arrested for breach of the peace.

With respect to the first claim of the defendant, there is nothing to suggest that the trial judge even saw the complaint made by the defendant against the officer who arrested him, let alone considered it. There is no indication of how it came to be included in the court file. Counsel have not only a right but also a duty to examine the court file, especially in a trial without a jury, to see that it contains no extraneous material which may influence the trier. In any event, the document contains nothing of an incriminating nature and conforms generally to the defendant's testimony at trial that the arresting officer assaulted and physically abused him for no good reason before he had uttered any "swear words." Even if the stand ard applicable to errors involving constitutional rights were applicable to this situation; i.e., proof of harmlessness beyond a reasonable doubt; *Chapman* v. *California,* 386 U.S. 18, 24.26, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967); we would find it satisfied.

We need not dwell upon the second claim of the defendant, that the action of the police officer in stopping and questioning the defendant as he walked along the road was illegal because of the absence of probable cause to believe that he had committed a crime. The circumstances known to the officer who stopped the defendant here would certainly constitute

---

[1] The officer testified that the defendant had called him a "fucking asshole, a fucking pig."

a sufficiently articulable suspicion of criminal activity to warrant the modest intrusion upon the defendant's privacy which took place. *Terry* v. *Ohio,* 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The evidence indicates that there was no search of or even contact with the defendant's person, but merely questioning in a noncustodial setting. Furthermore, we are not dealing here with the issue of whether certain evidence obtained as the result of an unlawful search or inquisition should be suppressed. We are unaware of any authority holding that the "fruit of the poisonous tree" doctrine may be applied to excuse a criminal act on the ground that the occasion for it was the misconduct of the police. No one would suggest that the defendant could justifiably have resorted to violence against the officer because he resented the interrogation. We are not concerned here with the right to voice a protest against an unlawful arrest, because no arrest had been contemplated before the defendant's utterance, which is the basis for his conviction. See *State* v. *Sweeney,* 157 Conn. 485, 489–90, 255 A.2d 622 (1969).

The remaining issue of this appeal is whether the words which the defendant addressed to the police officer were of such a nature as to constitute " 'fighting' words – those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." (Footnote omitted.) *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 1031 (1942). The defendant was charged with a violation of General Statutes § 53a-181.[2] This statute

---

[2] General Statutes § 53a-181 provides: "(a) A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public, hazardous or physically offensive condition by any act which he is not licensed or privileged to do.

(b) Breach of peace is a class B misdemeanor."

contains six subsections, only one of which is related to the evidence produced at trial. Subsection (5) makes a person guilty of a breach of the peace when he, "with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . in a public place, uses abusive or obscene language or makes an obscene gesture." The defendant has not raised any claim of vagueness or overbreadth directed to the statute. In previous decisions we have given the terms "abusive" and "obscene" a sufficiently narrow reading to avoid these problems. "Obscene" has been limited to a sexually offensive connotation and "abusive" has been confined to the "fighting" words category of expression as defined in *Chaplinsky* v. *New Hampshire,* supra; *State* v. *Lavorgna,* 37 Conn. Sup. 767, 772–74, 437 A.2d 131 (1981); *State* v. *Hoskins,* 35 Conn. Sup. 587, 589–94, 401 A.2d 619 (1978); *State* v. *Anonymous (1978–4),* 34 Conn. Sup. 689, 693–95, 389 A.2d 1270 (1978) (offensive and disorderly conduct); *State* v. *Anonymous (1977–6),* 34 Conn. Sup. 575, 577, 377 A.2d 1342 (1977); *State* v. *Cimino,* 33 Conn. Sup. 680, 681–82, 366 A.2d 1168 (1976); *State* v. *Magee,* 32 Conn. Sup. 639, 642–46, 353 A.2d 184 (1975) (obscene).

The question before us is whether the coarse language of the defendant under the circumstances in which it was uttered was sufficiently provocative to constitute "fighting words." Our customary deference to the trial court upon essentially a factual question is qualified by our duty to review the evidence ourselves in cases involving a possible infringement upon the constitutional right of free expression. *Jacobellis* v. *Ohio,* 378 U.S. 184, 190, 84 S. Ct. 1676, 12 L. Ed. 2d 793 (1964); *Culombe* v. *Connecticut,* 367 U.S. 568, 605, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961); *State* v. *Frazier,* 185 Conn. 211, 219, 440 A.2d 916 (1981). Having done so, we find ourselves in disagreement with the trial court and overturn the conviction of the defendant.

A significant circumstance here is that the defendant's remark was addressed to a police officer rather than to some member of the public. "But the situation may be different where such words are addressed to a police officer trained to exercise a higher degree of restraint than the average citizen." *Lewis* v. *New Orleans,* 408 U.S. 913, 92 S. Ct. 2499, 33 L. Ed. 2d 321 (1972) (Powell, J., concurring). Several authorities have held that where a police officer is the only person upon whose sensibilities the inflammatory language could have played, a conviction can be supported only for "[e]xtremely offensive behavior supporting an inference that the actor wished to provoke the policeman to violence." Model Penal Code § 250.1, comment 14, p. 18 (Tent. Draft No. 13, 1961), cited in *Lewis* v. *New Orleans,* supra, 913 (Powell, J., concurring); *Harbin* v. *State,* 358 So. 2d 856, 857 (Fla. Dist. Ct. App. 1978); *State* v. *John W.,* 418 A.2d 1097, 1106–1108 (Me. 1980). The considerations which have led to this treatment of police officers as fair game for verbal abuse are not only that their training and experience should make them more thick-skinned than ordinary citizens, but also a reluctance to confer upon police "a virtually unrestrained power to arrest and charge persons with a violation . . . where there is no other valid basis for arresting an objectionable or suspicious person." *Lewis* v. *New Orleans,* 415 U.S. 130, 135–36, 94 S. Ct. 970, 39 L. Ed. 2d 214 (1974) (Powell, J., concurring); see *State* v. *John W.,* supra, 1107. Underlying the judicial disfavor of such arrests is the attitude that outrage is a normal reaction of an innocent person who is accosted as a potential suspect in a police investigation and that resort to vilification in such a situation is typical of contemporary manners. Insolence and vulgarity are not crimes and enforcing better standards of social deportment is not the business of police officers, whose full attention should be occupied with matters of greater public concern. It is not a choice open to us whether it would be wiser to approve such arrests as a

kind of safety valve for the bruised feelings of an officer who has been subject to abusive language and, frustrated from other remedy, may be more inclined to resort to violence. That decision has been made by the constitutional guaranty of freedom of speech, which tolerates no restraint upon verbal expression applicable to this case except for words "which tend to trigger an immediate violent reaction." *State* v. *Hoskins,* 35 Conn. Sup. 587, 590, 401 A.2d 619 (1978).

The words used by the defendant are similar to other uncouth utterances aimed at police officers which have been found to fall outside this narrow "fighting word" exception. *Harbin* v. *State,* supra; *Chicago* v. *Blakemore,* 15 Ill. App. 3d 994, 305 N.E.2d 687 (1973); *State* v. *John W.,* supra; *Downs* v. *State,* 278 Md. 610, 366 A.2d 41 (1976); *Matter of Welfare of S.L.J.,* 263 N.W.2d 412, 415 (Minn. 1978); *State* v. *McKenna,* 415 A.2d 729, 730 (R.I. 1980); contra, *Commonwealth* v. *Mastrangelo,* 489 Pa. 254, 414 A.2d 54, appeal dismissed, 449 U.S. 894, 101 S. Ct. 259, 66 L. Ed. 2d 124 (1980). There were no special circumstances here, such as threatening actions or the presence of persons other than the officers whom the words might have incited, which imparted to the unadorned language itself any additional provocative overtone. We are constrained to conclude that the evidence presented was insufficient as a matter of law to prove beyond a reasonable doubt that the defendant's coarse words were sufficiently inflammatory to arouse retaliatory violence by the only person who heard them.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to render a judgment of acquittal.

In this opinion DALY and COVELLO, Js., concurred.