STATE OF CONNECTICUT *v.* HENRY BECKENBACH
(2006)

TESTO, DUPONT and BORDEN, Js.

Argued February 8—decision released May 15, 1984

*Joseph E. Fazzano,* with whom, on the brief, was *Raymond Seligson,* for the appellant (defendant).

*Linda N. Knight,* deputy assistant state's attorney, with whom, on the brief, were *Raymond Doyle,* and *John M. Massameno,* assistant state's attorneys, for the appellee (state).

BORDEN, J. The defendant was convicted of the crimes of interfering with an officer in violation of General Statutes § 53a-167a (a) and breach of peace in violation of General Statutes § 53a-181 (a). He appealed,[1] claiming that the trial court abused its discretion in denying his motions for continuance which were based on the unavailability of the counsel of his choice at the time of the trial, and claiming that the evidence was insufficient to sustain the convictions.

The jury could reasonably have found the following facts. At about 9:30 p.m. on June 10, 1981, the defendant and his codefendant[2] were riding their motorcycles in Danbury when the codefendant lost control, went through an intersection, hit a parked car and was thrown from his motorcycle. A restaurant was located at the intersection. The defendant parked his motorcycle in front of the restaurant and went to the codefendant's aid. Within minutes, officers James X. Terry and Sharon McIntosh of the Danbury police department arrived. Terry helped the codefendant to his cruiser to rest while awaiting an ambulance. Officer Leonard W. Silver, Jr., a state protective service guard stationed

---

[1] The appeal was originally filed in the Appellate Session of the Superior Court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 3 (c).

[2] The codefendant was charged with two motor vehicle offenses arising out of the same incident. He was acquitted in a joint trial with the defendant.

at Western Connecticut State College, arrived in his cruiser. Just prior to the accident Silver had been proceeding north and been passed by the defendant and the codefendant proceeding south; and when he heard a dispatch about the accident, he immediately came to the scene.

As soon as the defendant saw Silver he began to shout "that mother-fucker almost got us killed" and that it was the "fucking auxiliary," meaning Silver, who had caused the accident. By now some thirty to forty patrons of the restaurant, some of them intoxicated, had left the bar of the restaurant and gathered within hearing distance of the defendant. Terry asked the defendant to calm down, which he did momentarily; but then be began to curse Silver, yelling "that mother-fucker got my friend hurt," and pounded with his fist on Silver's cruiser.

Detective Nelson Carvalho of the Danbury police department then arrived. He knew the defendant. He told the defendant to calm down or he would be arrested. The defendant and Carvalho began to cross the street to talk; but as the defendant saw the codefendant being put into the ambulance he headed for it. The ambulance attendant told him to step back so that the attendants could close the doors. Meanwhile Detective Elliot Brevard of the Danbury police department, who is black, told the defendant to step back and calm down. The defendant told Brevard to "get the fuck out of my face." The defendant, confusing Brevard with two other black officers, complained that Brevard had cut him off in traffic the previous night, and again told him to "get the fuck out of my face." Carvalho again warned the defendant to calm down or face arrest.

As Carvalho and Brevard walked away from the defendant, he continued to complain loudly about the "fucking cops" and the way they were investigating

the accident. When Brevard and Carvalho were about fifteen feet from the defendant he yelled "you nigger cop" and that he was "going to get the nigger." He then approached Brevard, swearing and calling Brevard "a no-good mother-fucking cop." Brevard told the defendant he was under arrest for breach of peace.

When Brevard placed his hand on the defendant's arm to arrest him, the defendant pulled away and raised his arm to Brevard. Carvalho came to Brevard's aid and grabbed the defendant's other arm. Carvalho tried again to calm the defendant, but the defendant tried to push Brevard and Carvalho and continued to struggle. He was forceably led to a cruiser and handcuffed.

I

The defendant's principal claim is that the court abused its discretion in denying his motions for continuance of the trial so as to permit him to be represented by the counsel of his choice. Under the circumstances of this case, we agree.

The defendant was first arraigned on June 22, 1981, when he pleaded not guilty and elected a jury trial. In March, 1982, he retained Joseph E. Fazzano, of Hartford, a trial attorney of some twenty-five years experience, to represent him. Fazzano filed his appearance for the defendant. The case was assigned for trial on Wednesday, June 2, 1982, at which time Fazzano was on a trial in a civil case in Hartford. The court continued the case to June 3. On that date attorney Kevin Dubay, an associate in Fazzano's office, came to court and requested a continuance due to the defendant's insistence on Fazzano's defending him and Fazzano's unavailability due to the civil trial in which he was engaged. Dubay had been practicing law for approxi-

mately three years.[3] The court denied the request[4] and ordered selection of the jury to begin. After the jury was selected the case was continued to Tuesday, June 8. Fazzano was still on the trial in the civil case. Dubay informed the court of that fact, renewed the motion for a continuance and informed the court that the defendant insisted that Fazzano defend him. The court again denied the motion for continuance. The trial, with Dubay representing the defendant, consumed five trial days, beginning on June 8 and ending on June 17, resulting in conviction on both charges. The court then

[3] There is some confusion in the record as to what preceded this episode. Dubay stated to the trial judge that during the previous week the presiding judge had summoned him to court to discuss the case; that he requested a continuance based on Fazzano's unavailability, Fazzano being on a trial in a civil case at that time; that he was told to inform the court when the civil trial was completed; and that he understood that to mean that the continuance had been granted. The trial court stated that there must be some misunderstanding; that his check with the clerk and the presiding judge indicated their understanding that the case would be ready to go forward early in the week of May 30, 1982. Our decision does not turn on a resolution of this factual dispute, however.

[4] The court specifically declined reliance on Practice Book § 281, which provides in relevant part: "Attorneys shall not enter or maintain appearances in cases in more than one place in the judicial district in which their principal office is located, or in any other judicial district unless they have trial counsel available to proceed in any case when reached.

"The fact that an attorney has a case assigned in a judicial district other than the one where his principal office is located shall not constitute a valid ground for the continuance of an action reached for trial in any place in which he has entered an appearance." The state urges us to sustain the trial court's decision on this basis. While it is true that we are free to sustain a trial court's judgment on a theory different from that adopted by it; see, e.g., *Groton* v. *Commission on Human Rights & Opportunities,* 169 Conn. 89, 101, 362 A.2d 1359 (1975); we decline to do so in this case. We note that Practice Book § 281 is part of the civil rules. Assuming arguendo that it, like many other civil rules, applies to criminal cases; see, e.g., Practice Book § 288; we also note that the state did not file a preliminary statement of issues, under Practice Book § 3012 (a), to present this as an alternative ground upon which to affirm the judgment. Furthermore, Practice Book § 281, had the court employed it, would raise additional considerations of policy and prior notice which neither party has briefed. Under all these circumstances we decline to consider this claim and leave it for another day.

continued the case to June 18 for sentencing. On that date the defendant, through Dubay, moved "to set aside the verdict pursuant to Connecticut Practice Book Section 899" on the grounds of insufficiency of the evidence and denial of the motions for continuance.[5] The court denied the motions.

The matter of a continuance is traditionally within the discretion of the trial judge, which will not be disturbed absent a clear abuse. *Ungar* v. *Sarafite,* 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921, reh. denied, 377 U.S. 925, 84 S. Ct. 1218, 12 L. Ed. 2d 217 (1964); *Thode* v. *Thode,* 190 Conn. 694, 697, 462 A.2d 4 (1983); *State* v. *Olds,* 171 Conn. 395, 402, 370 A.2d 969 (1976). When, however, the reason for the requested continuance is the unavailability of a criminal defendant's chosen counsel, the exercise of that discretion requires a delicate balance between, on one hand, the defendant's constitutional right to counsel of his choice; see *Powell* v. *Alabama,* 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932); *Linton* v. *Perini,* 656 F.2d 207, 208 (6th Cir. 1981); which is not absolute; *State* v. *Rapuano,* 192 Conn. 228, 233 n.6, 471 A.2d 240 (1984); and, on the other hand, the public interest in the prompt and efficient administration of justice; *Giacalone* v. *Lucas,* 445 F.2d 1238, 1240 (6th Cir. 1971), cert. denied, 405 U.S. 922, 92 S. Ct. 960, 30 L. Ed. 2d 793 (1972); which includes the inherent and necessary right of the courts to "be firm and create the expectation that a case will go forward on the specific day that it is assigned." *In re Mongillo,* 190 Conn. 686, 691, 461 A.2d 1387 (1983). Thus, in such a situation the scale must be sensitively calibrated.

---

[5] Insofar as it applied to the claim of insufficiency of the evidence, the proper characterization of the motion under Practice Book § 899 was a motion for judgment of acquittal. Insofar as it applied to the claim of denial of the motions for a continuance, the proper motion was for a new trial under Practice Book § 902.

Each case must turn on its own facts and circumstances. *Gandy* v. *State of Alabama,* 569 F.2d 1318, 1324 (5th Cir. 1978). The factors to be weighed are the timeliness of the request for continuance; the likely length of the delay; the availability of other, adequately equipped and prepared counsel to try the case; whether other continuances have been requested and granted; the balanced convenience and inconvenience to litigants, witnesses, opposing counsel and the court; whether the reasons for the continuance are legitimate, or whether the request is dilatory, purposeful or contrived; whether the defendant contributed to the circumstances giving rise to the request; the age and complexity of the case; whether denial of the continuance will result in identifiable and substantial prejudice to the defendant's case; whether there are numerous codefendants, rendering calendar control more difficult than usual; and any other relevant factors disclosed by the facts and circumstances of the case. See *Linton* v. *Perini,* supra, 210; *United States* v. *Burton,* 584 F.2d 485, 490–91 (D.C. Cir. 1978), cert. denied, 439 U.S. 1069, 99 S. Ct. 837, 59 L. Ed. 2d 34 (1979); *Gandy* v. *State of Alabama,* supra; *United States* v. *Rastelli,* 551 F.2d 902, 905–906 (2d Cir.), cert. denied, 434 U.S. 831, 98 S. Ct. 115, 54 L. Ed. 2d 91 (1977).

Applying these factors to the facts of this case, we are constrained to conclude that the trial court abused its discretion in denying the defendant's motions for a continuance. The requests were timely and repeatedly made. Although the delay was apparently long enough so that Fazzano was still on the civil trial on June 18, when the defendant was sentenced, a period of approximately two weeks from the first trial assignment date, there is no indication that the civil trial was of such a contemplated length that awaiting its completion would have delayed this trial for an unreasonably long period of time. Although the defendant does not point

to any identifiable prejudice resulting from Dubay's representation and does not claim lack of effective representation by him; cf. *State* v. *Chairamonte,* 189 Conn. 61, 65–66, 454 A.2d 272 (1983); we cannot ignore the difference between being represented by a trial attorney of twenty-five years experience and being represented by one of three years experience in a case in which the defendant's liberty is at risk.[6] Cf. *Giacalone* v. *Lucas,* supra. No other continuances had been requested or granted. The only codefendant was also represented by Fazzano and joined in the motions for continuance. Cf. *United States* v. *Barrentine,* 591 F.2d 1069 (5th Cir.), cert. denied, 444 U.S. 990, 100 S. Ct. 521, 62 L. Ed. 2d 419 (1979). There is no showing here of any particular inconvenience to witnesses, the state's attorney's office or the court; the request was legitimate, and was not dilatory, purposeful or contrived; and the defendant did not contribute to the circumstances resulting in the request. When placed on the sensitively calibrated scale weighing the relative interests in a case such as this, these factors substantially outweigh the counterweight of the age and relative simplicity of the case.[7]

We do not depart in this case from the principles of effective caseflow management articulated in *In re Mongillo,* supra. Indeed, *Mongillo* recognizes that in

---

[6] We note that here the risk materialized. The court imposed an effective sentence of nine months incarceration, execution suspended after six months, and one year's probation.

[7] We have considered the cases relied on by the state; see, e.g., *United States* v. *McManaman,* 653 F.2d 458 (10th Cir. 1981); *United States* v. *Barrentine,* 591 F.2d 1069 (5th Cir.), cert. denied, 444 U.S. 990, 100 S. Ct. 521, 62 L. Ed. 2d 419 (1979); *United States* v. *Rastelli,* 551 F.2d 902 (2d Cir.), cert. denied, 434 U.S. 831, 98 S. Ct. 115, 54 L. Ed. 2d 91 (1977); *United States* v. *Rosenthal,* 470 F.2d 837 (2d Cir. 1972), cert. denied, 412 U.S. 909, 93 S. Ct. 2298, 36 L. Ed. 2d 975 (1973); *Rolon Marxuach* v. *United States,* 398 F.2d 548 (1st Cir.), cert. denied, 393 U.S. 982, 89 S. Ct. 454, 21 L. Ed. 2d 443 (1968); and find that, although they employ essentially the same balancing test we adopt, they are factually inapposite to this case.

the criminal arena sanctions against an attorney, where called for, may sometimes be more appropriate than penalties imposed on the client. Id., 692. We hold only that the facts and circumstances of this case required that calendar control yield to the defendant's right to counsel of his choice.

Nor is our decision inconsistent with the recent United States Supreme Court decision in *Morris* v. *Slappy*, 461 U.S. 1, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983). There the court stated, in what one of the concurring opinions characterized as "rather broad-ranging dicta"; id., 29; that the sixth amendment right to counsel does not guarantee a "meaningful relationship" between the defendant and his counsel. Id., 14. Furthermore, in that case the defendant did not effectively make his request for his initially appointed public defender, who was unavailable due to illness, until the third day of trial. Finally, the defendant here makes no such broad-ranging claim; his claim is based on abuse of discretion under all the circumstances of the case.

## II

The defendant's two remaining claims require little discussion. Although a new trial is necessary, we discuss these claims because they would, if valid, obviate that necessity.

He argues that the evidence was insufficient to constitute the crime of breach of peace because the words he uttered could not, as a matter of law, constitute that crime. He relies on *State* v. *Nelson,* 38 Conn. Sup. 349, 448 A.2d 214 (1982). We disagree, and find *State* v. *Nelson,* supra, distinguishable.

The defendant was charged with violating that portion of the breach of peace statute which provides as follows: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm,

or recklessly creating a risk thereof, he . . . in a public place, uses abusive . . . language . . . ." General Statutes § 53a-181 (a) (5).[8] Both sides agree, as do we, that the constitutional guarantee of freedom of speech requires that this part of the statute be confined to language which, under the circumstances of its utterance, constitutes " 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." (Footnote omitted.) *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 572, 62 S. Ct. 766, 86 L. Ed. 1031 (1942); *State* v. *Nelson,* supra, 353.

Fighting words, in constitutional parlance, are those which are inherently inflammatory; *Street* v. *New York,* 394 U.S. 576, 592, 89 S. Ct. 1354, 22 L. Ed. 2d 572 (1969); and are directed at a particular individual or group. *Cohen* v. *California,* 403 U.S. 15, 20, 91 S. Ct. 1780, 291 L. Ed. 2d 284, reh. denied, 404 U.S. 876, 92 S. Ct. 26, 30 L. Ed. 2d 124 (1971); *State* v. *Hoskins,* 35 Conn. Sup. 587, 591, 401 A.2d 619 (1978). They are "those which touch the raw nerves of one's sense of dignity, decency, and personality and which, therefore, tend to trigger an immediate violent reaction." *State* v. *Hoskins,* supra, 590. We have little difficulty in concluding that the defendant's repeated vile, racist and threatening epithets hurled at the officers in front of thirty to forty people, some of whom were intoxicated, fall well within the pale of fighting words.

*State* v. *Nelson,* supra, is factually inapposite. There the defendant, stopped alone by a policeman in an isolated area late at night, called him a " 'fucking asshole, a fucking pig.' " Id., 351 n.1. We agree that policemen

---

[8] Although the information also referred to the use by the defendant of "obscene" language, at the trial the state relied only on the use of "abusive" language and the court so charged the jury. The state also relied only, and the court so charged, on the statutory language referring to recklessly creating the risk of inconvenience, annoyance or alarm.

must be "more thick-skinned than ordinary citizens"; id., 354; but that did not require these officers to ignore the defendant's repeated words in front of that crowd. "Words are like sparks. They are capable not only of igniting individual reaction, they are equally capable of setting off a group conflagration whether by way of inciting to riot or provoking hostile reaction." *State v. Hoskins,* supra, 594.

The defendant also argues that the evidence was insufficient to constitute the crime of interfering with an officer under General Statutes § 53a-167a (a) because, he claims, there is no evidence of an intent to struggle other than to indicate he did not want to be held; there is no evidence of injury to or attempt to injure an officer; there is no evidence of an attempt to escape; and his conduct was de minimus. This argument is without merit.

General Statutes § 53a-167a (a) provides that a "person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer . . . in the performance of his duties." We are in accord with *State v. Brown,* 33 Conn. Sup. 515, 518, 356 A.2d 913 (1976); "Those words, particularly 'interfere,' have a broad scope. By using those words it is apparent that the legislature intended to prohibit any act which would amount to meddling in or hampering the activities of the police in the performance of their duties. . . . The [defendant's] act, however, does not have to 'be wholly or partially successful . . . [nor must it] be such as to defeat or delay the performance of a duty in which the officer is then engaged. The purpose of the statute, which had its origin in the common law, is to enforce orderly behavior in the important mission of preserving the peace; and any act that is intended to thwart that purpose is violative of the statute.' " The defendant must have acted with the intent to interfere with the performance of the officers' duties.

*State* v. *Walker,* 34 Conn. Sup. 548, 550, 375 A.2d 426 (1976). Applying this standard, and construing the evidence in a light most favorable to sustaining the verdict; *State* v. *Smith,* 185 Conn. 63, 71, 441 A.2d 84 (1981); we conclude that the evidence was sufficient to support the verdict.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.