[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant was tried to the court on August 28, 2001 on two files, docket numbers CR 00 0190119S and CR 00 0189970S, involving two separate incidents. Each information alleged a single count of breach of the peace, in violation of General Statutes § 53a-181 (a)(1), (3) and (5). The first incident occurred on June 9, 2000, with Sergeant Robert Labonte of the Wethersfield Police Department, near the defendant's home in Wethersfield. The second incident occurred on June 15, 2000, at the Food Bag store in Wethersfield, involving Sergeant Andrew Power of the Wethersfield Police Department. The court deferred its decision at that CT Page 1297-bx time.
The defendant filed his motion to dismiss on August 31, 2000 and his motion to suppress on the date of trial. The defendant made an oral motion for judgment of acquittal after the close of the state's case. The court agreed to hear and decide the motion to dismiss together with the motion for judgment of acquittal at the same time upon agreement of the parties. Argument was heard at that time and briefs were requested by the court. The court deferred its ruling on all issues at that time. The defendant filed his omnibus memorandum in support of his motions to dismiss, suppress and for judgment of acquittal on October 1, 2001. The state filed its answer on October 30, 2001. The court now renders its decision on all issues.[1]
 FIRST INCIDENT — DOCKET NO. CR 00 0190119S
Norman Davidson testified that on June 9, 2000, he was working at the Silas Deane Middle School in Wethersfield. Approximately between 7:00 A.M. and 7:15 A.M., Davidson was located at the lower soccer field that was adjacent to Darwell Street. Davidson was setting up some equipment before school started that day when he heard someone yelling. He saw a red automobile heading north on Darwell. Davidson made an in-court identification of the operator of the red automobile as the defendant. The defendant was yelling at a jogger on Darwell Street. Shortly thereafter, the defendant made a left-hand turn onto Maxwell Street just in front of the jogger. The defendant drove twenty feet up Maxwell Street. He stopped his vehicle and started yelling out the window again. Shortly thereafter, the defendant exited his vehicle. The defendant had his fists clenched. He called the jogger an "asshole" and said "Come on. Right now." The defendant took a couple of steps toward the jogger when he exited his vehicle. Afterward, the defendant returned to his vehicle and yelled out "faggot" and "pussy." He gave the jogger "the finger" and drove off. Davidson was concerned by what he was witnessing and thought that there was going to be a fight. At the time of the incident, Davidson did not know that the jogger was a police officer.
Wethersfield Police Sergeant Robert Labonte testified that on June 9, 2000, he was jogging along a route which he had jogged for the previous nineteen years. This route is near the defendant's home. At approximately 7:10 A.M., he was off duty and jogging on Fairmount Street when he noticed the defendant driving slowly along side of him, following him. The defendant was hanging out of the driver's side window, slumped out of the window, sticking out his middle finger and yelling at Labonte. Labonte lowered the volume on his radio and heard the defendant say to him "Faggot, pig, I'll kick your ass." Labonte replied "Dante, what's your problem with me?" The defendant said that he had a problem with CT Page 1297-by Labonte and several other officers and said "I'm going to own your house. I got a federal lawsuit against you for breaking into my house." Labonte told the defendant to "let it go."
Labonte testified that he continued jogging on Fairmount Street before he reached the intersection at Darwell Street. The defendant sped by Labonte and made a left turn onto Darwell in front of Labonte. The defendant started to get out of his car as Labonte was passing him. The defendant was in the middle of the road as Labonte started to pass by the defendant. The defendant started to open the door, saying, "I'm going to kick your ass, punk." Labonte thought that the defendant was going to come out of the car, and he cautioned the defendant, saying "Don't start it," or "Don't do it." Labonte continued jogging. The defendant closed the door and drove up the street. He then slammed on his brakes; stopped in the middle of the road, turning his vehicle clockwise in the road between Maxwell and Fairmount on Darwell. The defendant suddenly swung open the car door, jumped out of the car and ran toward Labonte, pumping his fists, saying "I'm going to kick your ass." At that time, the defendant and Labonte stopped. The defendant was about ten to twelve feet away from Labonte, who prepared to defend himself. Labonte was being sued in Federal Court along with other police officers by the defendant for an incident that occurred at the defendant's house in 1997.
 SECOND INCIDENT — DOCKET NUMBER CR 00 0189970S
Wethersfield Police Sergeant Andrew Power testified that on June 15, 2000 at approximately 6:15 A.M., he walked inside the Food Bag convenience store, located at 384 Silas Deane Highway, in the Town of Wethersfield, while on duty and in uniform. While there, he purchased a gallon of milk and a newspaper. On that day, two employees of the Food Bag, Joann Mirles and Linda Syphers. were working when Power arrived. Power had stopped at the Food Bag on many occasions before this date and knew both employees.
Approximately five to ten minutes later, the defendant entered the store. He walked around behind Power, to Power's right, at which point Power stepped to the left. It appeared to Power that the defendant was trying to read his name tag. Power told the defendant that if the defendant was going to read his name tag, he would tell the defendant his name. At that point, the defendant stepped back and raised his fist, saying to Power: "Do you have a problem with me?" Power responded, "You give me the finger every time you see me. Please stop giving me the finger." The defendant was acting aggressively and Power assumed a defensive position. The defendant had given Power the finger five to ten times during the previous weeks before this incident while Power was on and off duty. CT Page 1297-bz
To avoid a confrontation with the defendant, Power walked out of the store heading toward his cruiser. The defendant followed Power. As he left the store, the defendant said "I'll kick your punk ass." Syphers and Mirles testified that they heard the defendant's words to Power. The defendant repeated the words "I'll kick your ass" to Power several more times outside the store. Power felt threatened by the defendant, in that he felt that the defendant would come toward the cruiser and try to provoke him physically. Mirles testified that she felt extremely uncomfortable over the incident. Syphers testified that she felt shocked and insecure. Both of the witnesses were concerned that a fight would occur between the defendant and Power. The defendant was very loud and his tone of voice was aggressive.
Power did not arrest the defendant at that time. He felt that it was more important to de-escalate the situation and avoid a confrontation with the defendant. Power left in his cruiser without taking the newspaper that he had purchased. He returned later to retrieve his newspaper which he had left behind. Power had never spoken to the defendant before this date.
 MOTION TO SUPPRESS
In connection with the June 15, 2000 incident, the defendant seeks to suppress the testimony of Mirles and Syphers. He contends that both Mirles and Syphers overheard his comments to Powers only through the use of an electronic listening device at the Food Bag convenience store. The defendant alleges that such devices are illegal and that evidence derived from the use of them is inadmissible and should be suppressed.
Mirles testified that she heard the defendant's conversations with Power without the aid of any electronic surveillance system, and she did not rely on any device or equipment in connection with her testimony at trial. On direct examination, Syphers testified that she heard the defendant threaten Power without the aid of any listening device or equipment. The defendant objected to testimony concerning overheard conversations by Syphers through the electronic monitoring system. The court sustained the objections. On cross-examination, it was defense counsel who inquired about the statements made by the defendant to Power that Syphers had overheard through the electronic monitoring system at the Food Bag store. In any event, the court did not consider the statements heard by Syphers through the listening device in rendering its decision.
The defendant's motion to suppress is denied. CT Page 1297-ca
 MOTION FOR JUDGMENT OF ACQUITTAL
Practice Book § 42-40 provides in pertinent part that "the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged . . . for which the evidence would not reasonably permit a finding of guilty." The defendant is charged in each case with one count of breach of the peace in violation of General Statutes § 53a-181 (a)(1), (3) and (5). The statute provides in pertinent part that: "A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (3) threatens to commit any crime against another person or his property; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture."
The defendant's first argument is that the language which he used was protected by the free speech clause of the first amendment to the United States constitution under the particular circumstances of each case.
"Freedom of speech . . ., which [is] protected by the First Amendment from infringement by Congress, [is] among the fundamental personal rights and liberties which [is] protected by the Fourteenth Amendment from invasion by state action." (Internal quotation marks omitted.) Chaplinskyv. New Hampshire, 315 U.S. 568, 570-71, 62 S.Ct. 766, 86 L.Ed.2d 1031
(1942). However, "it is well understood that the right of free speech is not absolute at all times and under all circumstances." Id. 171. "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." Id. 171-72. "These include . . . the insulting or `fighting' words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Id. 172.
"Subdivision (1) of § 53a-181 (a) proscribes speech that properly can be characterized as fighting words when, under the totality of the circumstances, that speech amounts to violent, tumultuous or threatening behavior that portends violence. . . ." (Internal quotation marks omitted.) State v. Szymkiewicz, 237 Conn. 613, 622, 678 A.2d 473 (1996). The term `abusive language' in subdivision (5)[2] has also been confined to `fighting words' by our Appellate Court. See State v.Beckenbach, 1 Conn. App. 669, 677-78, 476 A.2d 591 (1984), rev'd on other grounds, 198 Conn. 43, 501 A.2d 752 (1985); State v. Nelson,38 Conn. Sup. 349, 353, 448 A.2d 214 (App. Sess. 1982). The words used by the defendant in the first incident, namely "Faggot, pig, I'll kick your ass," "I'm going to kick your ass, punk," and "Come on. Right now" clearly fall within the "fighting words" limitation to thefirst amendment. The same is true of the words used in the second incident, CT Page 1297-cb namely, "I'll kick your punk ass," and "I'll kick your ass," which was repeated several times.
The defendant, however, argues further that "[e]ven if the language used constituted `fighting words' in other contexts . . ., the need for officers to be `more thick-skinned than ordinary citizens' when faced with a verbal assault . . . requires the court to afford first amendment protection to the defendant's words." (Citation omitted.) (Defendant's Omnibus Memorandum in Support of Motions to Dismiss, Suppress and for Judgment of Acquittal [Def.'s Memo.], p. 8.) It is true that "the situation may be different where such words are addressed to a police officer trained to exercise a higher degree of restraint than the average citizen." (Internal quotation marks omitted.) State v. Nelson, supra,38 Conn. Sup. 354. "[W]here a police officer is the only person upon whose sensibilities the inflammatory language could have played, a conviction can be supported only for [e]xtremely offensive behavior supporting an inference that the actor wished to provoke the policeman to violence." (Internal quotation marks omitted.) Id. In the first incident, there was one witness to the altercation. There were two witnesses to the second altercation. All of them were concerned that a fight was imminent. The language used by the defendant in both incidents which threatened violence against the police officers, together with the threatening gestures by the defendant of raising and pumping his fist, were sufficient to support an inference that the defendant wished to provoke the policemen to violence, thereby removing his words and actions from first amendment protection.
The defendant also argues that General Statutes § 53a-181 is unconstitutionally vague and overbroad. Our Supreme Court and Appellate Court are clear, however, that the breach of the peace statute is not unconstitutionally overbroad provided the Chaplisky "fighting words" limitation is applied so as not to criminalize constitutionally protected speech. See State v. Szvmkiewicz, supra, 237 Conn. 619-21; State v.Nelson, supra, 38 Conn. Sup. 353; State v. Hoskins, 35 Conn. Sup. 587,590-91, 401 A.2d 619 (App. Sess. 1978). Section 53a-181 will also survive constitutional vagueness problems if the interpretive gloss of State v.Indrisano, 228 Conn. 795, 640 A.2d 986 (1994), is applied to the mens rea element of the statute. See State v. Wolff, 237 Conn. 633, 670,678 A.2d 1369 (1996) ("[T]he mens rea language . . . can be formulated more precisely as follows: the predominant intent is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm.") As to the defendant's claim that General Statutes § 53a-181 is unconstitutionally vague as applied to him under the facts of this case, the court concludes that the defendant CT Page 1297-cc could not reasonably believe that his words and actions, including threatening to assault two police officers while making threatening gestures in a public place, would not violate the breach of the peace statute.
The defendant further invites the court to interpret the phrase "kick one's ass" in a fashion other than its literal understanding. He argues that "[s]uch an expression is sometimes used in a competitive situation, such as a vow of a sport's team to defeat an opponent." (Def.'s Memo., p. 8, fn 3.) The court concludes that the evidence does not support such an interpretation in this case.
Finally, the defendant argues that Article I, § 4 of the constitution of Connecticut provides more protection for free speech than the federal constitution. It is true that our Supreme Court has stated that "the Connecticut constitution bestow[s] greater expressive rights on the public than the federal constitution." Ramos v. Town of Vernon,254 Conn. 799, 816, 761 A.2d 705 (2000); see State v. Linares,232 Conn. 345, 379-81, 655 A.2d 737 (1995). However, no cases could be found holding or even intimating that § 53a-181 may violate the Connecticut constitution after the Chaplinsky gloss and the Indrisano
gloss are applied. The defendant has failed to convince this court that the state of Connecticut affords constitutional protection to "fighting words," particularly in the context of the present case where the words used threatened imminent violence against police officers.
The court concludes that the evidence presented would reasonably permit a finding of guilty of breach of the peace in violation of General Statutes § 53a-181 (a)(1), (3) and (5) as to both files. Therefore, the defendant's motion for judgment of acquittal is denied.
 MOTION TO DISMISS
Based upon the foregoing analysis, the defendant's motion to dismiss is denied.
 CONCLUSION
The court finds the following facts to have been proven after hearing all of the evidence and reviewing all of the exhibits.
With regard to count one of file number CR 00 0190119S, the court finds that on June 9, 2000, the defendant drove by Officer Labonte, who was jogging near the defendant's home and off duty, and yelled at the officer "Faggot, pig, I'll kick your ass," and "I'm going to kick your ass, punk." Labonte cautioned the defendant to stop. The defendant then exited CT Page 1297-cd his vehicle, ran toward Labonte, and stated "I'm going to kick your ass" and "Come on. Right now" while pumping his fists. Labonte prepared to defend himself. The witness to the incident, Norman Davidson, felt that a fight was imminent. The credible testimony of Labonte demonstrated that he had jogged the same route many times before the incident and, that he did not provoke the defendant.
Ultimately, the issue is whether the words stated by the defendant to Labonte, along with his actions and conduct, support a conviction under § 53a-181 (a)(1), (3) and (5). Considering all of the evidence, and applying the Chaplinsky and Indrisano gloss, the court finds the defendant guilty beyond a reasonable doubt of breach of the peace in violation of General Statutes § 53a-181 (1), (3) and (5). The defendant, with the intent to cause inconvenience, annoyance or alarm, engaged in tumultuous and threatening behavior in a public place, threatened to commit a crime against another person, in particular, assault against Officer Labonte, and used abusive language in a public place.
With regard to count one of file number CR 00 0189970S, the court finds that on June 15, 2000, Officer Power was in the Food Bag convenience store in uniform when the defendant approached him without the officer's provocation and raised his fist. Power left the store to avoid a confrontation with the defendant. The defendant followed him and stated "I'll kick your ass" and "I'll kick your punk ass." Power felt threatened and was concerned that the defendant would try to provoke him physically. The two store employees heard these words and were concerned about a possible fight between the defendant and Officer Power.
Considering all of the evidence, and applying the Chaplinsky andIndrisano gloss to the statute, the court finds the defendant guilty beyond a reasonable doubt of breach of the peace in violation of General Statutes § 53a-181 (a)(1), (3) and (5). The defendant, with the intent to cause inconvenience, annoyance or alarm, engaged in tumultuous and threatening behavior in a public place, threatened to commit a crime against another person, in particular, assault against Officer Power, and used abusive language in a public place.
BY THE COURT,
Angelo L. dos Santos Judge of the Superior Court